The appellant, Isiah Wright, Jr., was convicted of assault in the second degree and reckless endangerment. He was sentenced to 10 years in the penitentiary and was fined $5,000 on the assault conviction and was sentenced to one year in the penitentiary and was fined $2,000 on the reckless endangerment conviction. The appellant raises two issues on appeal.
 I
The appellant contends that the trial court erred in denying the motion for a mistrial that he made when he discovered that G.G., a juror, failed to disclose information on voir dire. Specifically, the appellant contends that he was prejudiced because G.G. failed to disclose that she knew the district attorney's secretary, Addie Glover, and that she was Addie Glover's ex-mother-in-law and the grandmother of her child. The appellant alleges that had this information been disclosed he would have used a peremptory strike against G.G. because G.G. not only knew Addie Glover but also had been related to her by marriage.
On voir dire examination of the jury venire by the appellant's counsel, the court asked: "Are there any of you who know or are related to any other members of the district attorney's office?" The district attorney was then instructed by the trial court to introduce the members of his staff, which he did as follows: "This is Ms. Addie Glover. She is the secretary in our office here in Tuskegee. She's worked for us for a number of years." R. 16. Addie Glover was seated at the prosecution table at this time helping the district attorney strike the jury. No one on the venire indicated that they knew Addie Glover. During jury deliberations the appellant discovered that G.G., was the mother of Addie Glover's ex-husband and was the grandmother of Addie Glover's child. Yet G.G. did not answer or indicate during voir dire that she knew Addie Glover. This court finds equally disturbing the fact that Addie Glover, who was helping the district attorney strike the jury, failed to disclose during the voir dire the nature of her relationship to G.G. *Page 1218 
The appellant informed the trial judge of the discovery and moved for a mistrial while the jury was deliberating. The appellant argued that even if the situation did not justify a challenge for cause,[1] the appellant was entitled to know about the relationship and to have the opportunity to exercise a peremptory strike against G.G. R. 338.
Addie Glover was called to testify and stated that she was not related to G.G. She informed the court that she "was married to [G.G.'s] son and we divorced in 1988," and that the marriage produced one daughter who is G.G.'s granddaughter. R. 340-41.
G.G. was called to testify. She testified that she was Addie Glover's former mother-in-law and that she "knew [Addie Glover] work[ed] in [the district attorney's office.]." R. 342. The voir dire question was read by the court reporter, and G.G. stated that she thought she remembered the question being asked during voir dire. When the judge suggested to G.G. that she perhaps had understood the appellant's voir dire question to include only lawyers and not the support staff in the district attorney's office she agreed, saying, "Yes. I didn't understand the question. I didn't know that's what it meant." R. 343. After the trial judge further suggested that G.G. had not intentionally failed to respond to the question, G.G. responded, "[N]o, I didn't." R. 343. G.G. stated that she did know Addie Glover. She acknowledged that she had been seated on the second row of the venire and that Addie Glover was seated inside the bar at the prosecution table and that she saw Addie Glover get up and leave the courtroom and come back. R. 345. She stated that she did not remember Addie Glover standing up and being introduced by the district attorney. R. 345.
After this testimony the appellant argued that G.G. "did not indicate in response [during voir dire] that she didn't understand the question" and that Addie Glover not only helped the district attorney during voir dire "but helped him strike this jury, and did know that [G.]G. did not respond affirmatively to knowing her" but did not come forward with the information. R. 346. The appellant pointed out that in a similar situation the appellant had informed the district attorney that a veniremember had failed to respond to the district attorney's question whether any jurors knew the defense attorney and that when the appellant informed the district attorney that this veniremember did know defense counsel, the district attorney used a peremptory strike to remove the veniremember from the jury.
The trial court denied the motion for a mistrial, stating:
 "The court is not prepared to award the district attorney's office or any of the district attorney's employees with any award for their conduct. However, the issue before this court is simply, whether or not, under the circumstances, this juror, considering the nature of the question, considering the nature of this juror, could have or should have reasonably understood the question as framed to specifically require that the juror reveal this relationship arising out of a divorce, or, former marriage between her son and a staff member. And the juror has testified in court that she did not understand or realize the import of this question and did not deliberately and intentionally withhold information [to] which the parties are entitled. And even if I accept the fact — and I will, because I said I will, nobody even thought of this until just before the jury was going to return a verdict. I still believe that this is not grounds for a mistrial. And your motion is denied."
R. 347. The appellant's written motion for a new trial on the above grounds was also denied. C.R. 77.
We reverse the trial court's judgment.
 " ' " ' "We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in *Page 1219 
probable prejudice to the movant. This appears to be the general rule throughout the country [see Annotations, 38 A.L.R.2d 624, and 63 A.L.R.2d 1061]. . . ." ' "
" '. . . .
 " 'In emphasizing that the trial court is in the best position to make findings on the question of probable prejudice, the court in Freeman, suggested factors to aid the lower courts in their task of determining probable prejudice.
 " ' "Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: [1] temporal remoteness of the matter inquired about, [2] the ambiguity of the question propounded, [3] the prospective juror's inadvertence or willfulness in falsifying or failing to answer, [4] the failure of the juror to recollect, and [5] the materiality of the matter inquired about." '
 "Parish [v. State], 480 So.2d [29] at 31-32 [(Ala.Cr.App. 1985)], quoting, in part, Freeman v. Hall, 286 Ala. 161, 167, 238 So.2d 330, 336 (1970). (Emphasis added.) See also Beauregard v. State, 372 So.2d 37 (Ala.Cr.App.), writ denied, 372 So.2d 44
(Ala. 1979)."
Knight v. State, 675 So.2d 487 (Ala.Cr.App. 1995).
Applying these factors we conclude as follows. As to the first factor, the extent of the personal relationship between G.G. and Addie Glover is not disclosed in the record. However, it is clear that there was a personal relationship because they are the mother and the paternal grandmother of the same child. Addie Glover has been divorced from G.G.'s son since 1988, but the relationship between her and G.G. exists despite the divorce. We do not feel that this relationship is irrelevant when determining potential juror bias. As to the second factor, the question asked of the prospective jurors was not ambiguous. The question "Do you know a certain person?" is straightforward and simple. If G.G. had responded that she knew Addie Glover, the appellant could have inquired further into the nature of their relationship and removed the juror with a peremptory strike. As to the third and fourth factors, the trial court has implied that the juror's omission was not willful but rather that the "the nature of this juror" caused her to fail to "understand or realize the import of this question and [she] did not deliberately and intentionally withhold information [to] which the parties are entitled." However, despite the trial judge's comment, the undisputed facts are that at the hearing on the motion for a new trial, G.G. stated that she knew Addie Glover and knew that she worked for the district attorney; that she saw her sitting in the courtroom at the prosecution table; and that she heard the voir dire question asking if any juror knew any members of the district attorney's staff. Addie Glover stood up and was introduced by the district attorney. Despite these facts, G.G. remained silent. As to the fifth consideration, the materiality of the matter inquired about, even though Addie Glover was a secretary in the district attorneys office and not a lawyer who would try the case, the appellant would have been justified in exercising a peremptory strike to remove a juror related to an employee of the district attorney's office and the grandmother of that employee's child.
The trial judge's reference to the "nature of this juror" infers that the judge believed something about the juror excused or rendered inadvertent her concealment. A trial must be free not only from prejudice but also from the appearance thereof. See, Bowens v. State, 54 Ala. App. 491, 309 So.2d 844
(1974), cert. denied, 293 Ala. 746, 309 So.2d 850 (1975) (exclusion of identifiable groups within the community from the jury rolls is a sufficient basis for reversal without the defendant's showing actual prejudice). The appearance of probable prejudice exists in this case for two reasons — because the record indicates that the juror's silence was deliberate and because the record indicates that Addie Glover's silence was deliberate. Other than the trial judge's remark, everything in the record pertaining to this incident indicates that both parties' failure to respond was deliberate. Deliberate concealment of a relationship inquired about during voir dire *Page 1220 
suggests prejudice may exist against the appellant in this case.
We might have found G.G.'s silence harmless and that the appellant suffered no prejudice due to her failure to answer the defense question on voir dire in this case were it not for the silence of Addie Glover. It is hard to believe that Addie Glover failed to notice her ex-mother-in-law on the second row of the jury box and failed to notice her name on the juror list. "An accused is constitutionally guaranteed the right to be tried by an 'impartial' jury. U.S. Const. Amend. VI. 'In Alabama, a defendant has the right to strike a petit jury from a panel of fairminded, impartial prospective jurors.'Hunter v. State, 585 So.2d 220, n. 1 (Ala.Cr.App. 1991)." Statev. Freeman, 605 So.2d 1258 (Ala.Cr.App. 1992) (trial court's grant of a new trial was affirmed where it was "discovered that the foreman of the jury that had convicted [Freeman] was a former police officer. The foreman did not disclose this fact during voir dire questioning"). Under the circumstances in the present case, we find the appearance of probable prejudice existed where both a member of the district attorney's staff, who was seated at the prosecution's table and who participated in jury selection, and a juror failed to disclose information inquired about during voir dire relevant to the defense in exercising its peremptory strikes. We reverse the trial court's denial of the appellant's motion for a mistrial.
 II
Even though our resolution of the issue raised in Part I of the opinion requires a reversal, we will briefly address the appellant's second issue raised by appellant because is concerns venue.
The appellant contends that the trial court erred in denying his motion for a change of venue. The appellant, however, has failed to demonstrate that the trial court abused its discretion in denying his motion for a change of venue.Trahan v. State, 450 So.2d 1102, 1106 (Ala.Cr.App. 1984). The appellant alleges on appeal that the motion was due to be granted because of "damaging and inaccurate excessive publicity and because Appellant's ex-wife Tywone Wright, who is intimately bound up in the events leading to this prosecution, was an employee of the Macon County Circuit Clerk's office." Appellant's brief at page 14. The appellant alleged that the following facts justified a change of venue: a newspaper article appeared on the case quoting Circuit Clerk Eddie Mallard giving inaccurate details about the appellant's case, the State's witness, Tywone Wright, worked for Mallard; and Mallard and Wright were the circuit clerk employees who handled jury selection. The appellant has not shown how the pretrial publicity so "saturated" the community as to affect potential jurors, nor did he show that, assuming these allegations are true, he suffered any actual prejudice. Nelson v. State,440 So.2d 1130 (Ala.Cr.App. 1983). Additionally, there is no indication from the juror voir dire that the jurors had been made aware of the appellant's case and had been prejudiced against the appellant by any pretrial publicity. Therefore the trial court's denial of the motion for a change of venue was not error.
For the reasons above we hold that the trial court's denial of the appellant's motion for a mistrial was reversible error. Therefore, the appellant's conviction is reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.
[1] Whether G.G. should have been removed for cause because she was the ex-mother-in-law of Addie Glover was not raised on appeal.