TAYLOR, Presiding Judge.
The appellant, Billy Joe Shields, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975. He was sentenced to 20 years’ imprisonment in the state penitentiary.
The state’s evidence tended to show that on the night of May 19, 1993, the appellant shot and killed Terrence Thomas. Dr. Joseph Embry, a medical examiner for the Department of Forensic Sciences, testified that Thomas died from a gunshot wound to the chest. Angela Blevins testified that on the night of the killing she saw the appellant in his car talking with his girlfriend, Crystal Owens, outside Blevins’s apartment. Blevins and another friend were talking with the appellant and Owens when the victim approached the car. Alvin Haynes stated that the victim, Terrence Thomas, who had been drinking, was standing with him and another friend on Haynes’s sister’s porch. Thomas told his friends that “he couldn’t stand that black m-f — ,” referring to the appellant, and that he was going to go over and slap him. Thomas walked over to the appellant’s car and began hitting the appellant through the car window. Haynes stated that Thomas then grabbed the appellant around the neck and began choking him. The appellant pulled a gun and shot Thomas. Maxine Fambro testified that after the first gunshot Thomas ran across the street. The appellant then jumped out of the ear and shot Thomas a second time.
The appellant testified at trial that he feared for his life and that he shot Thomas in *971 self-defense. He stated that Thomas told him he was going to Mil him. The appellant claimed that after he got out of the ear Thomas appeared to him to be turning toward the car and he was afraid Thomas was going to attack him. He offered the following evidence in support of his claim of self-defense: 1) that Thomas was “twice as big” as the appellant — the appellant is 5'4" tall and weighs 130-185 pounds, Thomas was 6'0" tall and weighed 269 pounds, 2) that Thomas was older than the appellant — the appellant was 20 years old at the time of the killing, the victim was 27, 3) that all the witnesses said that Thomas was the initial aggressor and that he attacked the appellant without provocation, 4) that Thomas had been drinking before he was killed and that his blood alcohol level was .131%, and 5) that Thomas had a general reputation in the community for being violent.
I
The appellant’s main contention is that the state failed to disclose Thomas’s prior assault conviction and that this failure violated the appellant’s due process rights as recognized by the United States Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The United States Supreme Court recently addressed concerns raised by Brady and stated the following:
“The prosecution’s affirmative duty to disclose evidence favorable to a defendant can trace its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with this Court’s decision in Brady v. Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963). See id., at 86, 83 S.Ct., at 1196 (relying on Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 341-342, 79 L.Ed. 791 (1935), and Pyle v. Kansas, 317 U.S. 213, 215-216, 63 S.Ct. 177, 178-179, 87 L.Ed. 214 (1942)). Brady, held ‘that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.’ 373 U.S., at 87, 83 S.Ct. at 1196-1197; see Moore v. Illinois, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 2567-2568, [33 L.Ed.2d 706] (1972). In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), however, it became clear that a defendant’s failure to request favorable evidence did not leave the Government free of all obligation. There, the Court distinguished three situations in which a Brady claim might arise: first, where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured, 427 U.S., at 103-104, 96 S.Ct., at 2397-2398; second, where the Government failed to aecede to a defense request for disclosure of some specific Mnd of exculpatory evidence, id., at 104-107, 96 S.Ct., at 2398-2399; and third, where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way. The Court found a duty on the part of the Government even in this last situation, though only when suppression of the evidence would be ‘of sufficient significance to result in the denial of the defendant’s right to a fair trial.’ Id., at 108, 96 S.Ct., at 2400.
“In the third prominent case on the way to current Brady law, United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court disavowed any difference between exculpatory and impeachment evidence for Brady purposes, and it abandoned the distinction between the second and third Agurs circumstances, ie., the ‘specific-request’ and ‘general- or no-request’ situations. Bagley held that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, ‘if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’ 473 U.S., at 682, 105 S.Ct. at 3375 [3383], (opinion of Blackmun, J.); id., at 685, 105 S.Ct., at 3385 (White, J., concurring in part and concurring in judgment).
“Four aspects of materiality under Bag-ley bear emphasis. Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evi *972 dence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant’s acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). Id., at 682, 105 S.Ct. at 3383-3384 (opinion of Blackmun, J.) (adopting formulation announced in Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052 [2068], 80 L.Ed.2d 674 (1984)); Bagley, supra, at 685, 105 S.Ct., at 3385 (White, J., concurring in part and concurring in judgment) (same); see id., at 680, 105 S.Ct., at 3382-3383 (opinion of Blackmun, J.) (Agurs ‘rejected a standard that would require the defendant to demonstrate that the evidence if disclosed probably would have resulted in acquittal’); cf. Strickland, supra, at 693, 104 S.Ct. at 2068 (‘[W]e believe that a defendant need not show that counsel’s deficient conduct more than likely than not altered the outcome in the case’); Nix v. Whiteside, 475 U.S. 157, 89 L.Ed.2d 123, 106 S.Ct. 988 (1986) (‘[A] defendant need not establish that the attorney’s deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland’). Bagley ⅛ touchstone of materiality is a ‘reasonable probability of a different result, and the adjective is important. The question is not whether the defendant would more than likely not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A ‘reasonable probability” of a different result is accordingly shown when the Government’s evidentiary suppression ‘undermines confidence in the outcome of the trial.’ Bagley, 473 U.S., at 678, 105 S.Ct., at 3381.
“The second aspect of Bagley materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
“Third, we note that, contrary to the assumption made by the Court of Appeals, 5 F.3d, at 818, once a reviewing court applying Bagley has found constitutional error there is no need for further harmless-error review. Assuming arguendo that a harmless error enquiry were to apply, a Bagley error could not be treated as harmless, since ‘a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different,’ 473 U.S., at 682, 105 S.Ct., at 3383 (opinion of Blackmun, J.) id., at 685, 105 S.Ct., at 3385 (White, J., concurring in part and concurring in judgment), necessarily entails the conclusion that the suppression must have had ‘ “substantial and injurious effect or influence in determining the jury’s verdict,” ’ Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239 [1253], 90 L.Ed. 1557 (1946). This is amply confirmed by the development of the respective governing standards. Although Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824 [828], 17 L.Ed.2d 705 (1967), held that a conviction tainted by constitutional error must be set aside unless the error complained of “was harmless beyond a reasonable doubt,’ we held in Brecht that the standard of harmlessness generally to be applied in habeas cases is the Kotteakos formulation (previously applicable only in reviewing nonconstitutional errors on direct appeal), Brecht, supra, 507 U.S., at 620-625, 113 S.Ct., at 1713-1714. Under Kotteakos a conviction may be set aside only if the error ‘had substantial and injurious effect or influence in determining the jury’s verdict.’ Kotteakos, supra, 328 U.S., at 776, 66 S.Ct., at 1253. Agurs, however, had previously rejected Kottea-kos as the standard governing constitutional disclosure claims, reasoning that ‘the *973 constitutional standard of materiality must impose a higher burden on the defendant.’ Agurs, 427 U.S., at 112, 96 S.Ct., at 2401. Agurs thus opted for its formulation of materiality, later adopted as the test for prejudice in Strickland, only after expressly noting that this standard would recognize reversible constitutional error only when the harm to the defendant was greater than the harm sufficient for reversal under Kotteakos. In sum, once there has been Bagley error as claimed in this case, it cannot subsequently be found harmless under Brecht.
“The fourth and final aspect of Bagley materiality to be stressed here is its definition in terms of suppressed evidence considered collectively, not item-by-item. As Justice Blackmun emphasized in the portion of his opinion written for the Court, the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. Id., 473 U.S., at 675, 105 S.Ct., at 3380, and n. 7. We have never held that the Constitution demands an open file policy (however such a policy might work out in practice), and the rule in Bagley (and, hence, in Brady) requires less of the prosecution that the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate. See ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993) (‘A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused’); ABA Model Rules of Professional Conduct 3.8(d) (1984) (‘The prosecutor in a criminal case shall ... make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense’).
[[Image here]]
“... [T]he government simply cannot avoid responsibility for knowing when the suppression of evidence has come to portend such an effect on a trial’s outcome as to destroy confidence in its result.
“This means naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. See Agurs, 427 U.S., at 108, 96 S.Ct., at 2399-2400, 49 L.Ed.2d 342 (‘[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure’). This is as is should be. Such disclosure will serve to justify trust in the prosecutor as ‘the representative ... of sovereignty ... whose interest ... in the criminal prosecution is not that it shall win the case, but that justice shall be done.’ Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629 [633], 79 L.Ed. 1314 (1935). And it will tend to preserve the criminal trial, as distinct from the prosecutor’s private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. See Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101 [3105-3106], 92 L.Ed.2d 460 (1986); Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628 [1631-1632], 14 L.Ed.2d 543 (1965); United States v. Leon, 468 U.S. 897, 900-901, 104 S.Ct. 3405 [3409], 82 L.Ed.2d 677 (1984) (recognizing general goal of establishing ‘procedures under which criminal defendants are “acquittal or convicted on the basis of all the evidence which exposes the truth” ’ (quoting Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). The prudence of the careful prosecutor should not therefore be discouraged.”
Kyles v. Whitley, 514 U.S. -, -, 115 S.Ct. 1555, 1565-69, 131 L.Ed.2d 490, 505-510 (1995). (Footnotes omitted.)
The state failed to disclose the fact that Thomas was convicted of assault in the first degree in 1990 for stabbing an unarmed man several times with a butcher’s knife. As a result of that conviction, Thomas was sentenced to three years in the penitentiary. In that case, Thomas had also been drinking and had stabbed the victim during an argument. Thomas also beat a woman who tried to come to the victim’s aid. The probation report stated that Thomas was “a dangerous *974 man” with a drinking problem and that he was a person who often resorted to violence.
After the trial, the appellant discovered Thomas’s prior conviction when appellate counsel received a telephone call from someone who indicated that he had been in prison with Thomas. The caller revealed this prior conviction. Before the sentencing hearing, the appellant requested that the court subpoena the Department of Corrections. As a result of the subpoena, the custodian of records presented information regarding Thomas’s prior conviction for assault. The appellant contends on appeal that he requested this information in his motion for discovery, which stated:
“Any and all material in the possession of the prosecution, or which, through due diligence, may be learned from the state or other sources, which might exculpate the defendant, negate the charges against him, lead to a reasonable doubt about his guilt, or otherwise be favorable to him.
“Any and all material known to the state or prosecutor, which is arguably exculpatory in nature.”
The appellant also filed a motion to compel production of exculpatory evidence and information, which stated:
“Evidence of any and all violent acts or threats of harm by the said Terrence Thomas, including statements, complaints, written or oral accounts, warrants, convictions, etc_ Upon information and belief, the said Terrence Thomas had also been involved in other violent acts, including possibly knife cuttings of other persons, and may have served time in the penitentiary. All of this evidence would substantiate the defendant’s reasonable apprehension of harm upon being threatened by someone of this size and with this nature or propensity.”
The court granted the discovery order and ordered the state to provide the appellant with any material that “indicated” or “implied” that the appellant acted in self-defense. The appellant asserts that evidence of this conviction, or other evidence surrounding the circumstances leading to this conviction, would have lent crucial support to his claim that he feared for his life when Thomas attacked him.
All three criteria set forth in Brady and discussed above in depth in Kyles were met. First, the prior conviction of the victim was suppressed by the state. The state admits that the record of the conviction was not disclosed to the appellant. There is no dispute that the state failed to disclose the prior conviction. Second, the evidence was favorable to the appellant’s defense. There is no question that this evidence would have been helpful to his defense. Third, the evidence was material to the appellant’s theory of self-defense. The disclosure of the prior conviction would have altered the appellant’s trial strategy. Evidence stemming from the assault conviction may have provided the jury with a reasonable doubt or at least resulted in the jury’s returning a verdict for a lesser offense. Even though evidence of the prior conviction may not have been admissible, it certainly would have led to admissible evidence. Specifically, this conviction would have led to witnesses who could have been called to add weight to the appellant’s claim that Thomas was a violent man.
The state contends that there was no Brady violation here, because evidence of the prior conviction would not have been admissible at trial as it did not involve the appellant. See C. Gamble, McElroy’s Alabama Evidence, § 63.01(3) (4th ed. 1991). The new Alabama Rules of Evidence address the admissibility of character evidence of a victim:
“(a) Character Evidence Generally. Evidence of a person’s character or a trait of character is not admissible for the purpose of proving conformity therewith on a particular occasion except:
[[Image here]]
“(2) Character of Victim
“(A) In Criminal Cases, (i) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or (ii) evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to *975 rebut evidence that the victim was the first aggressor.”
Rule 404, Ala.R.Evid.
In the alternative, the state contends that any error was harmless because the appellant was able to present testimony of Thomas’s reputation for violence. However, “once a reviewing court applying Bagley has found constitutional error there is no need for further harmless-error review.” Kyles, 514 U.S. at -, 115 S.Ct. at 1566, 131 L.Ed.2d at 507.
Further, “the question is not whether the defendant would more than likely not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles, 514 U.S. at -, 115 S.Ct. at 1566, 131 L.Ed.2d at 506. Given the fact that the jury requested that the judge repeat his charge on manslaughter it cannot be said that additional evidence that may have been produced from further investigation of Thomas’s prior conviction would not have affected the jury’s decision.
The appellant was denied his due process rights as guaranteed by Brady. The appellant was entitled to have this evidence disclosed to him before trial. The failure to disclose this evidence denied the appellant his fundamental right to present a defense in his behalf.
II
In the interest of judicial economy, we will comment on one remaining issue that may reappear on retrial. The appellant contends that the trial court erred by denying the appellant’s objection that the state used its peremptory strikes in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The state requested that the case be remanded for a new Batson hearing on this very point. In addressing this issue we caution the trial court to follow the Alabama Supreme Court’s ruling in Ex parte Thomas, 659 So.2d 3 (Ala.1994), in any subsequent proceeding.
For the reasons discussed in Part I of this opinion, the judgment is reversed and the case remanded to the Circuit Court for Shelby County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.