MURDOCK, Justice.
Roger Dixon was convicted of attempted murder and of discharging a firearm into an occupied vehicle.[1] Dixon filed a motion for a new trial alleging, among other things, (1) that several jurors failed to truthfully answer questions during voir dire, and (2) that the trial court improperly restricted Dixon’s cross-examination of a prosecution witness. Dixon’s motion for a new trial was denied after an evidentiary hearing. The Court of Criminal Appeals affirmed Dixon’s convictions and sentences by an unpublished memorandum, from which Judge Welch dissented, with an opinion. Dixon v. State, 55 So.3d 1250 (Ala.Crim.App.2008) (Welch, J., dissenting).
Dixon filed a petition for a writ of certio-rari contending, among other things, that the decision of the Court of Criminal Appeals conflicts with Ex parte Dobyne, 805 So.2d 763 (Ala.2001), and Tomlin v. State, 695 So.2d 157 (Ala.Crim.App.1996), regarding Dixon’s claims that several jurors failed to truthfully answer questions during voir dire. We reverse and remand. In light of our disposition of Dixon’s argument regarding the voir dire of one of the jurors, we pretermit consideration of Dixon’s other claims.

I. Facts

In light of the nature of the dispositive issue, only a brief summary of the substantive facts is necessary. Between June 2004 and May 2005, Dixon had repeated altercations with David Jackson concerning Dixon’s relationship with Jackson’s estranged wife. During the early morning hours of May 14, 2005, Dixon encountered *1259 Jackson and Brad Carey at a convenience store.
At trial, Dixon testified and disputed the State’s version of the facts regarding his encounter with Jackson and Carey. According to Jackson, Dixon threatened to kill him, fired several gunshots, one of which struck Carey’s vehicle, and then chased Carey and Jackson in his vehicle at a high rate of speed when they left the convenience store. In contrast, Dixon testified that he fired his gun into the air during the encounter because he was afraid of Jackson and Carey and that he did not follow Jackson and Carey when they left the convenience store.
As to the dispositive issue in this case, Dixon contends that L.A., who served as a juror at his trial, failed to respond correctly to the following question asked during voir dire of the venire:
“Have you or a member of your immediate family ever been a criminal defendant in a criminal case in either the district court or the circuit court in this county where [the district attorney or any of his assistants] prosecuted the case?”
L.A. did not respond to this question; however, criminal charges were pending against her at the time of Dixon’s trial. About two months before Dixon’s trial, L.A. had been twice charged by family members with a misdemeanor.[2] The charges had been served on L.A., and she had posted an appearance bond in each case. About a week before Dixon’s trial, L.A.’s case had been continued by the trial court. At the time of Dixon’s trial, L.A. personally was engaged in discussing the disposition of the charges with the district attorney. Shortly after Dixon’s trial, L.A.’s case was placed in pretrial diversion status.
At the hearing on Dixon’s motion for a new trial, the trial court heard testimony from L.A. and from Dixon’s trial counsel. The trial court did not make any written findings of fact as to the claim regarding L.A.’s failure to disclose the pending criminal charges in response to the question posed on voir dire and did not indicate on the record the basis for its decision denying Dixon’s motion for a new trial. Comments by the trial court at the hearing suggest that it thought the question asked during voir dire was ambiguous.

II. Standard of Review

In Ex parte Dobyne, 805 So.2d at 772, this Court stated:
“[T]he proper standard to apply in determining whether a party is entitled to a new trial in this circumstance [where a juror fails' to respond correctly to a question on voir dire] is ‘whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.’ Ex parte Stewart, 659 So.2d [122] at 124 [ (Ala.1993) ]. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court’s discretion.”
Id. See also Reynolds v. City of Birmingham, 723 So.2d 822, 824 (Ala.Crim.App.1998) (“ ‘[T]he ruling of the trial judge denying a motion for new trial will not be disturbed in the absence of a showing of abuse of discretion, and this Court will indulge every presumption in favor of the correctness of his ruling.’ ” (quoting Hall v. State, 348 So.2d 870, 875 (Ala.Crim.App.1977))).

*1260
III. Analysis

Dixon contends that the trial court should have granted his motion for a new trial because L.A., who served on the jury that convicted him, failed to respond to the above-referenced question during voir dire. As noted, the trial court did not make any written findings of fact as to this issue and did not indicate on the record the basis for its decision to deny Dixon’s motion for a new trial, which was grounded, in part, on L.A.’s failure to respond to the question. In affirming Dixon’s conviction, the Court of Criminal Appeals concluded that L.A.’s failure to disclose information about the criminal charges pending against her was inadvertent, rather than willful. That court also determined that there was no prejudice to Dixon by L.A.’s failure to respond because she later testified that the fact that charges were pending against her did not affect her verdict. We granted certiorari to review Dixon’s claim that the decision of the Court of Criminal Appeals conflicts with Dobyne and Tomlin.
In Dobyne, this Court explained the standard for granting a new trial based on a juror’s failure to answer questions on voir dire truthfully:
“The proper standard for determining whether juror misconduct warrants a new trial, as set out by this Court’s precedent, is whether the misconduct might have prejudiced, not whether it actually did prejudice, the defendant. See Ex parte Stewart, 659 So.2d 122 (Ala.1993).... The ‘might-have-been-prejudiced’ standard, of course, casts a ‘lighter’ burden on the defendant than the actual-prejudice standard. See Tomlin v. State, supra, 695 So.2d at 170
[[Image here]]
“It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. ... However, not every failure to respond properly to questions propounded during voir dire ‘automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.’ Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970).... As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is ‘whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.’ Ex parte Stewart, 659 So.2d at 124. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court’s discretion. ...
“ ‘The determination of whether the complaining party was prejudiced by a juror’s failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Some of the factors that this Court has approved for using to determine whether there was probable prejudice include: “temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.” ’
“Union Mortgage Co. v. Barlow, 595 So.2d [1335] at 1342-43 [(Ala.1994)]
[[Image here]]
“The form of prejudice that would entitle a party to relief for a juror’s nondisclosure or falsification in voir dire would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. Ex parte Ledbetter, *1261 404 So.2d 731 (Ala.1981).... If the party establishes that the juror’s disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. Id. Such prejudice can be established by the obvious tendency of the true facts to bias the juror, as in Ledbetter, supra, or by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992).”
Dobyne, 805 So.2d at 771-73 (footnote omitted; emphasis added).
In Tomlin, a case cited with approval in Dobyne, the Court of Criminal Appeals discussed in detail the application of the might-have-been-prejudiced standard to a juror’s failure to answer correctly questions posed on voir dire concerning the juror’s ties to law enforcement and the juror’s experience as a victim of a crime. That court stated:
“ ‘We start with the basic constitutional premise that every person is entitled to an impartial jury [pursuant to the Sixth Amendment to the United States Constitution].’ Knight v. State, 675 So.2d 487, 493-94 (Ala.Cr.App.1995).... ‘It is fundamental to our system of impartial justice that “ ‘[p]arties have a right to have questions answered truthfully by prospective jurors to enable them to exercise their discretion wisely in exercising their peremptory strikes.’ ” ’ State v. Freeman, 605 So.2d 1258, 1259 (Ala.Cr.App.1992) (quoting Ex parte O’Leary, 438 So.2d 1372, 1373 (Ala.1983), quoting in turn Ex parte O’Leary, 417 So.2d 232, 240 (Ala.1982)). ‘Voir dire’ is an ancient phrase which literally means ‘to speak the truth.’ W. LaFave & J. Israel, Criminal Procedure § 22.3(a) (2d. ed. 1992). ‘ “Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right of challenge for cause, and is deceived into foregoing his right of peremptory challenge.”’ Ex parte Ledbetter, 404 So.2d 731, 733 (Ala.1981) (quoting Leach v. State, 31 Ala.App. 390, 18 So.2d 285, cert. denied, 245 Ala. 539, 18 So.2d 289 (1944)). ‘Failure to enforce the right to elicit from prospective jurors truthful answers to material questions renders hollow the right of peremptory challenge.’ Knight v. State, 675 So.2d at 494 (quoting Mitchell v. State, 458 So.2d 819, 821 (Fla.Dist.Ct.App.1984)).
“In addressing the issue whether a defendant was deprived of the right to exercise peremptory strikes based on truthful answers from prospective jurors, the Alabama Supreme Court recently reiterated the test to be ‘whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.’ Ex parte Stewart, 659 So.2d 122, 124 (Ala.1993) (emphasis added). This test casts a ‘light burden’ on the defendant. ...”
Tomlin, 695 So.2d at 169-70.
In the present case, we conclude that the trial court exceeded its discretion in denying Dixon’s motion for a new trial based on L.A.’s failure to disclose in response to a question on voir dire that criminal charges were pending against her. An analysis of the Dobyne factors reveals that most of those factors indicate that Dixon was prejudiced by L.A.’s failure to respond.
The matter was not temporally remote — the criminal charges had been filed less than two months before Dixon’s trial *1262 and they were still under pending at the time of Dixon’s trial.
As to the ambiguity of the question propounded, we conclude that the question was sufficiently definite to require an affirmative response from L.A. At the evi-dentiary hearing on Dixon’s motion for a new trial, L.A. testified that her understanding of the question was such that it did not require an affirmative answer, but the record simply does not provide adequate support for this assertion. L.A. did not offer a single reason she would understand the question to not require an affirmative response; instead, she offered a shifting series of explanations for her failure to respond affirmatively to the question, including (1) that she had not been arrested, but had merely been “served papers,” (2) that she was not aware that the charges were criminal charges because they related to a family dispute, (3) that the matter “wasn’t trouble with the law, it was a family member,” and (4) that she knew that the charges were going to be dropped.[3] We find these “hairsplitting” explanations to be wholly inadequate, especially in light of L.A.’s testimony that she herself had been negotiating with the district attorney about the disposition of those pending charges before Dixon’s trial and that she was aware that her case had been continued on April 3, 2007, approximately one week before the start of Dixon’s trial. At a minimum, the question was framed so as to require L.A. to mention the charges.[4]
Even if the question was ambiguous, however, the district attorney could have avoided the need for a new trial had he disclosed the fact of the pending charges when L.A. failed to respond affirmatively to the question. The district attorney himself was negotiating the disposition of L.A.’s cases, and the prosecutor in this case has never denied knowledge of the pending charges against L.A. Although various Alabama courts have held that the State does not have a general obligation to disclose information on veniremembers,[5] fairness dictates that the State cannot stand mute when a juror fails to respond (or responds incorrectly) to a question on voir dire and the prosecutor is aware of the true facts.
In Wright v. State, 678 So.2d 1216 (Ala.Crim.App.1996), the Court of Criminal Ap *1263 peals reversed a conviction because one of the jurors failed to disclose a close family relationship with a staff member in the district attorney’s office, who was present in the courtroom. The court stated:
“We might have found [the juror’s] silence harmless and that the appellant suffered no prejudice ... were it not for the silence of [the staff member]. ... [W]e find the appearance of probable prejudice existed where both a member of the district attorney’s staff, who was seated at the prosecution’s table and who participated in jury selection, and a juror failed to disclose information inquired about during voir dire relevant to the defense in exercising its peremptory strikes.”
678 So.2d at 1220. See also Tomlin, 695 So.2d at 176 (juror failed to disclose pending drug-possession charge; there was no indication that prosecutors knew of the pending criminal charge, but “had the prosecutors known, we believe considerations of basic fairness would have created an affirmative duty on the part of the prosecutors to make the disclosure”); Berger v. United States, 295 U.S. 78, 87, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (“while [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.”); Shields v. State, 680 So.2d 969, 974 (Ala.Crim.App.1996) (the “ ‘ “prudent prosecutor will resolve doubtful questions in favor of disclosure” ’ ” (quoting Kyles v. Whitley, 514 U.S. 419, 439, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), quoting in turn United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976))).
The materiality of L.A.’s failure to respond to the question and the prejudice to Dixon are evidenced by the testimony of Dixon’s trial counsel and by the nature of the information not disclosed. Dixon’s trial counsel testified at the evidentiary hearing that, had he known of the pending charges, he would have challenged L.A. for cause or exercised one his peremptory challenges to remove her. The direct testimony of Dixon’s trial counsel is prima facie evidence of prejudice to Dixon.
Further, even in the absence of such testimony, the potential for juror bias is obvious under the present circumstances. As Judge Welch stated in his dissent to the Court of Criminal Appeals’ unpublished memorandum:
“Certainly it would be a serious concern if a prospective juror was subject to the discretionary decisions of the district attorney. Human nature being what it is, it would have been natural for defense counsel to be suspicious about a juror who was beholden to the State, and to be reluctant to take the chance that the juror might be biased and wanting to curry favor with the State by voting to convict. Indeed, trial counsel testified that had L.A. been truthful he would have attempted to strike her for cause, and, failing that, he would have exercised a peremptory challenge and struck her from the venire.”
55 So.3d at 1254. See also Tomlin, 695 So.2d at 175 (juror’s failure to disclose pending charge of possession of cocaine warranted reversal of conviction).[6]
*1264 The State contends that the presumption of prejudice was rebutted by L.A.’s testimony at the hearing on Dixon’s motion for a new trial that the fact that she had pending criminal charges against her did not affect her verdict. The State’s contention is based upon L.A.’s negative response when asked whether her verdict was prejudiced by circumstances relating to the pendency of the criminal charges against her.[7] The State cites no authority and makes no legal argument to support the assertion that the presumption of prejudice can be rebutted merely by a juror’s conclusory statement that his or her verdict was not affected by the potential source of bias. In any event, the juror’s own testimony as to his or her impartiality in rendering a verdict does nothing to rebut evidence that trial counsel would have challenged the juror for cause or would have used a peremptory challenge to strike that juror had the juror responded truthfully to the question.[8] The point of peremptory challenges is to reduce the effect of hidden or unconscious biases. See Bruner v. Cawthon, 681 So.2d 173 (Ala.1996) (Maddox, J., concurring in the result) (discussing possible use of written questionnaires to “disclose hidden prejudices that the juror might not even suspect he or she has”); Ex parte Branch, 526 So.2d 609, 628 (Al.1987) (discussing role of peremptory challenges in identifying and excluding jurors likely to be biased against a party).
Dobyne is distinguishable from the present case as to prejudice. The juror in Dobyne failed to disclose that many years before Dobyne’s trial she had had some limited contact with the defendant in her capacity as a special-education coordinator. She testified at the defendant’s Rule 32, Ala. R.Crim. P., hearing that she did not remember the defendant. The trial court found that no prejudice had occurred. Do-byne’s trial counsel testified at the Rule 32 hearing, but he did not state that he would have challenged the juror if he had known of the relationship. He also testified that, other than the juror’s prior contact with the defendant, he considered her to be a desirable juror. This Court concluded that there was no error in the trial court’s rejection of the defendant’s juror-misconduct claim.
In the present case, we conclude that the juror’s bare assertion of impartiality is not sufficient to rebut the prima facie evidence, both direct and inferential, that Dixon was prejudiced by her failure to disclose her pending criminal charges. As Judge Welch stated in his dissent:
“It would seem to me that it is intellectually dishonest to pretend that Dixon *1265 was not prejudiced by L.A.’s silence. The record clearly reflects that at the time of voir dire L.A. was a criminal defendant, who for all practical purposes was in the middle of negotiating a plea agreement with the State. I believe that it would be difficult for a juror in L.A.’s position to be unbiased. I certainly do not believe that we can presume, despite L.A.’s protest to the contrary, that she was unaffected by her relationship with the State.
[[Image here]]
“... Jurors know that it is their job to be fair and to avoid prejudice and bias. They are so instructed during the court’s oral charge. After a trial, asking a juror if her verdict was affected by anything that would reflect on her ability to be fair, especially after that juror has been thoroughly questioned by defense counsel, is extremely unlikely to elicit a positive response. In essence the juror would have to admit her misconduct or bias in open court and to testify that she intentionally disregarded her duty to be fair. The juror would be unfamiliar with what would be the personal consequences of such an admission and might very well fear that she would be held in contempt or charged with a crime such as obstruction of justice if she admitted that her verdict was tainted by her bias. For these reasons it is unwise to place great weight on an answer affirming a lack of bias.”
55 So.3d at 1254-55.
Therefore, we conclude that L.A.’s failure to disclose the pending criminal charges was material and that Dixon was prejudiced by L.A.’s failure to disclose those charges and her ongoing negotiations with the district attorney’s office at the very time of Dixon’s trial. Even if L.A. honestly believed that those charges would not affect her decision, the legal standard for bias is unquestionably met in this case. Further, we conclude that the prejudice was sufficient to warrant a new trial, particularly in view of the fact that the district attorney could easily have avoided the necessity for a new trial by disclosing the pending charges.
We reverse Dixon’s convictions and remand this case for the trial court to conduct a new trial.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SHAW, J., recuses himself.*

. Dixon was sentenced to 20 years’ imprisonment on the attempted-murder charge; that sentence was split, and Dixon was ordered to serve 5 years in prison, followed by 5 years’ supervised probation. On the discharging-a-firearm charge, he was sentenced to 10 years' imprisonment, which sentence was also split, and he was ordered to serve 3 years in prison followed by 5 years’ supervised probation. The two sentences were to be served concurrently.

. The charge in each case was making a harassing communication, in violation of Ala. Code 1975, § 13A — 11—8(b). The charges were filed by L.A.’s teenage daughter and her former husband and related to a family dispute.

. Although the trial court made no express finding on this factor, it indicated at the hearing that the question applied only to cases that had been "prosecuted,” not to situations where the veniremember was "just charged with an offense.” L.A. did not make that distinction in any of her explanations for not responding to the question.

. We note that other veniremembers appeared to err in the direction of treating various voir dire questions as over-inclusive and of disclosing remote events or relationships that were arguably responsive to the question. In response to the question at issue, one veniremember disclosed a prosecution of a relative (not a member of her immediate family). Likewise, several jurors responded broadly to a set of more general questions about the district attorney's office’s handling of bad-check cases and child-support collection. L.A. could not have heard those responses and honestly believed that her cramped interpretation of the question posed was legitimate.
We also note that L.A. did not respond to the following question, which would seem to require disclosure of the pending charges and L.A.’s ongoing negotiations with the district attorney’s office:
"Now do any of you know any reason why if you were selected as a juror in this case that you could not give both the defendant and the State of Alabama a fair and impartial trial?”

.See, e.g., McGowan v. State, 990 So.2d 931, 967 (Ala.Crim.App.2003) (State has no duty to disclose information on prospective jurors; State has no duty to disclose information available to the defendant from other sources, including questions on voir dire).

. See also Brazleton v. State, 66 Ala. 96, 98 (1880) (challenge for cause proper where juror was a surety on the defendant’s appearance bond; even temporary relationships may "import a just belief of a want of impartiality — that a juror cannot stand indifferent ... from the favor springing out of the relation”); Ex parte Ledbetter, 404 So.2d 731, 734 (Ala.1981) (juror who is also a crime victim or who was former law-enforcement officer "would stand less indifferent than a layman, free from the tug of such former professional *1264 influences”); Wallace v. Campbell, 475 So.2d 521 (Ala.1985) (civil case for injuries suffered during a high-speed police chase; new trial required where juror failed to disclose that she was related to the sheriff of the county where the accident occurred); Cavalier Ins. Corp. v. Faulk, 368 So.2d 6, 8 (Ala.1979) (new trial required in civil case where two jurors failed to disclose that they had previously been represented in a lawsuit by one of the law firms involved in the trial).

. At the evidentiary hearing, the following exchange between L.A. and the prosecutor occurred:
"Q: ... [D]id the family dispute that resulted in the charges in Exhibits One and Two and the fact that this case was possibly pending when you sat as a juror, did that have anything to do with your verdict in the case?
"A: Absolutely not.”

. Here, that evidence takes the form of both "the obvious tendency of the true facts to bias the juror, as in [Ex parte] Ledbetter, [404 So.2d 731 (Ala.1981)], [and] by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992).” Dobyne, 805 So.2d at 773.