**Shannon HICE, Plaintiff–Appellant,**

v.

**Katrina LOTT, Sheila C. Middendorf, B & B Appraisals, and SCM Appraisals, Inc., Defendants–Appellees.**

**No. 08CA2615.**

Colorado Court of Appeals, Div. IV.

Nov. 25, 2009.

Bloom Murr & Accomazzo, P.C., Joseph A. Murr, Daniel R. Delaney, Denver, Colorado, for Plaintiff–Appellant.

Treece, Alfrey, Musat & Bosworth, P.C., Michael L. Hutchinson, Kathleen M. Byrne, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge BERNARD.

In this action seeking to recover damages based upon allegedly "inaccurate" and "inflated" real estate appraisals, plaintiff, Shannon Hice (the buyer), appeals the summary judgment entered in favor of defendants, Katrina Lott, Sheila C. Middendorf, B & B Appraisals, and SCM Appraisals, Inc. (the appraisers). We affirm.

This appeal presents two issues. The first is whether expert testimony is necessary to establish the standard of care an appraiser must employ when appraising a structure that may be a "mobile home." We conclude, based upon the record before us, that expert testimony is necessary in this summary judgment context as a matter of law.

The second issue is whether the trial court improperly dismissed the buyer's breach of contract claims. We conclude that the trial court did not err because, before the court entered the summary judgment order, the buyer did not contest the appraisers' argument that the buyer's claims were based on tort, not on contract.

## I. Background

The buyer held a lease purchase option on real property located in Brighton, Colorado. There was a dwelling on the property.

The buyer asked the seller to have the property appraised. At the seller's request, the appraisers performed separate appraisals of the property. They issued written reports valuing the property at $336,000 and $410,000, respectively.

The buyer also asked the seller to have the appraisers determine whether the dwelling was a "mobile home" that had been placed on a permanent foundation. Their reports each stated that the dwelling had been a "modular" home:

> It has been verified with the county appraiser that due to [the dwelling] being attached to a permanent foundation, [the dwelling's] classification is [a] single family residence and no longer modular.

One report added that some modular homes were used as comparisons in the appraisal process. Both reports stated that the dwelling "was never a mobile home."

Upon receiving these appraisals, the buyer allegedly expended substantial money and time toward purchasing the property. After making these expenditures, she obtained a third appraisal from another source, which stated that the dwelling had been "brought in

as a mobile home," and that the property was actually worth less than $252,500 at the time of the earlier appraisals.

Alleging that she was a third-party beneficiary to the contract between the seller and the appraisers, the buyer filed claims against the appraisers for professional negligence, negligent misrepresentation, and breach of contract. She contended that she would not have expended the money and time on the property in anticipation of buying it had she known that the dwelling had been a mobile home.

The buyer filed certificates of review under section 13–20–602, C.R.S.2009, declaring that "a person who has expertise in the area of the alleged conduct" of the appraisers had been consulted, and he had concluded that the claims did not lack substantial justification. However, when the buyer filed her expert witness disclosure, it only listed the name of a man who was not a real estate appraiser, but rather a licensed and certified installer of manufactured homes and a "licensed real estate and insurance broker." The buyer indicated that this man would testify that the dwelling was, or had been, a mobile home.

The buyer added that a receipt for a mobile home had been discovered "in the building department's file" concerning the property.

Before trial, the appraisers filed a motion for summary judgment in which they argued that the buyer was required to prove, through expert testimony, what the appraisers' standard of care was when appraising the property, and that they had not satisfied that standard. They argued that the buyer's only designated expert was not qualified to testify on those critical subjects, and that the buyer's failure to endorse a standard of care expert was fatal to her claims.

In her response, the buyer asserted that there was "no need for an expert to testify as to the standard of care and breach thereof" because the applicable standard was "easily understood," and was "codified" in the Uniform Standards of Professional Appraisal Practice (USPAP), which have been adopted in Colorado.

In ruling on the summary judgment motion, the trial court concluded:

- "USPAP standards are general standards and do not directly address the question presented in this case."
- "[E]xpert testimony would be required to prove that the alleged conduct of [the appraisers] constituted a breach of the standard of care set forth by ... USPAP."
- "The significance, both absolute and relative, of whether the [dwelling] was formerly a mobile or modular home, and the resulting effect upon the fair market value of the subject property, are beyond the knowledge of ordinary persons even with the non-specific guidance of the provisions of ... USPAP."

The buyer filed a motion to reconsider in which, for the first time, she sought to distinguish her negligence and contract claims. She argued that her contract claims "were not the subject" of the summary judgment motion, and that issues regarding the standard of care and expert testimony were "not necessary to determine" those claims. She also attached excerpts from deposition transcripts, portions of which she had not included or referenced in her response to the summary judgment motion. The trial court denied the motion to reconsider.

Based on our de novo review, we conclude that the trial court correctly determined that the issue of whether the dwelling was formerly a "mobile home" or a "modular home," and the effect of that determination on the dwelling's appraised value, were beyond the experience of ordinary jurors, even when assisted by the general USPAP standards upon which the buyer relies.

## II. Expert Testimony and the Standard of Care

The buyer contends that the trial court erred in entering summary judgment on her negligence claims because those claims did not require expert testimony to establish the standard of care. We disagree.

### A. General Principles

A party is entitled to summary judgment if the pleadings, discovery materials on file, and the affidavits of the parties, if any, establish that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c). In determining whether summary judgment is appropriate, the court must give the nonmoving party the benefit of all favorable inferences reasonably drawn from the undisputed facts and all doubts must be resolved against the moving party. *See Brodeur v. Am. Home Assurance Co.,* 169 P.3d 139, 146 (Colo.2007). We review a trial court's grant of summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995).

■ In order to establish a prima facie case of negligence, a plaintiff must establish that (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the breach of the duty caused the plaintiff's injury. Whether a duty exists is a legal question to be decided by the trial court. *Woods v. Delgar Ltd.,* 226 P.3d 1178, ——, 2009 WL 2182598 (Colo.App. No. 08CA1288, July 23, 2009).

When determining whether a defendant owes a duty, the court determines whether the defendant has an obligation to the plaintiff. The "standard of care" is what the defendant must do, or must not do, to satisfy this obligation. *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed.1984).

### B. Negligence by Licensed Professionals

■ When a claim of negligence is based on an allegation that a professional was negligent, the plaintiff must show that the professional's conduct fell below the standard of care associated with that profession. *See Redden v. SCI Colo. Funeral Servs., Inc.,* 38 P.3d 75, 80–81 (Colo.2001).

For those practicing a profession involving specialized knowledge or skill, the applicable standard of care generally requires the actor to possess a standard minimum of special knowledge and ability and to exercise reasonable care in a manner consistent with members of the profession in good standing. *Command Commc'ns, Inc. v. Fritz Cos.,* 36 P.3d 182, 189 (Colo.App.2001).

■ Establishing a standard of care in a professional negligence case normally requires an expert to explain it because ordinary persons are not conversant with it. *See Redden,* 38 P.3d at 81 (expert testimony is "generally necessary" in professional negligence cases to assist fact finder in determining applicable standards, because in "most cases" such standards are not within purview of ordinary persons); *Williams v. Boyle,* 72 P.3d 392, 397 (Colo.App.2003) (expert testimony is required to establish prima facie case of professional negligence in "the great majority of cases").

■ However, expert testimony is unnecessary in such cases if the relevant standard of care does not require specialized or technical knowledge. *See Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 343 (Colo.2004); *see also White v. Jungbauer,* 128 P.3d 263, 264 (Colo.App.2005)(expert testimony is not required if the subject matter of a professional negligence claim lies within the ambit of common knowledge of ordinary persons).

■ Nor is expert testimony required if a legislative enactment or administrative rule establishes the specific standard of care. *See Allen,* 102 P.3d at 343; *see also Giampapa v. Am. Family Mut. Ins. Co.,* 919 P.2d 838, 841 (Colo.App.1995). If the legislative enactment or administrative rule does not conclusively establish the standard of care, it may be used as evidence of the standard, and, in such instances, expert testimony will still be required to establish the standard if it is not within the common knowledge and experience of ordinary persons. *See Allen,* 102 P.3d at 343–44.

■ At trial, whether the applicable standard of care is a matter of common knowledge is a determination committed to the sound discretion of the trial court. *See id.* at 345; *see also Oliver v. Amity Mut. Irrigation Co.,* 994 P.2d 495, 497 (Colo.App. 1999). However, here we review the trial

court's decision to grant the appraisers' motion for summary judgment. A motion for summary judgment predicated on an allegation that no standard of care has been established is reviewed in the same manner as any other motion for summary judgment. Therefore, such a motion must be denied unless the record is sufficient to permit the trial court to determine, as a matter of law, that the plaintiff did not establish a standard of care. *See Tracz v. Charter Centennial Peaks Behavioral Health Sys., Inc.,* 9 P.3d 1168, 1173–74 (Colo.App.2000); *Jacque v. Pub. Serv. Co.,* 890 P.2d 138, 140 (Colo.App. 1994).

C. Real Estate Appraisers as Professionals

In 1989, Congress passed comprehensive legislation, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, to address problems created by the savings and loan failures of the 1980s. The failures of these financial institutions were caused, in part, by "faulty and fraudulent" appraisals of real estate collateral that undercut the financial stability of these lenders. H. Rep. No. 101–54(I), at 311 (1989). To address this causative factor, Congress established certain requirements for real estate appraisals connected to federally related transactions, including mandating that real estate appraisals be conducted "in accordance with uniform standards, by individuals whose competency has been demonstrated and whose professional conduct will be subject to effective supervision." 12 U.S.C. § 3331.

In 1990, our legislature expressly responded to the federal law by enacting a state legislative scheme governing real estate appraisers. Ch. 99, sec. 1, §§ 12–61–701 to – 717, 1990 Colo. Sess. Laws 835–45. Responding to Congress's concerns about the lack of oversight and regulation, *see* § 12–61–701, C.R.S.2009, the General Assembly intended to subject appraisers to the requirements and controls associated with licensed professions. *See* Dennis Ingwersen, *Professional Standards for the Appraiser,* 22 Colo. Law. 1264 (June 1993).

Under this regulatory framework, real estate appraisers are subject to a variety of requirements, and, based on their training and experience, must be certified, licensed, or registered. § 12–61–706(1)(b), C.R.S.2009. Their work is governed by rules and regulations issued by the Board of Real Estate Appraisers. § 12–61–704, C.R.S.2009. They may be disciplined, or have their certification, license, or registration denied, suspended, or revoked for misconduct. § 12–61–710, C.R.S.2009. Certain types of misconduct are unlawful, and may subject offenders to criminal penalties. § 12–61–712, C.R.S.2009.

Under the grant of authority to issue rules and regulations, section 12–61–706(1)(a), C.R.S.2009, the Division of Real Estate adopted USPAP as "the generally accepted standards of professional appraisal practice." Bd. of Real Estate Appraisers Rules § 11.1, 4 Code Colo. Regs. 725–2. The preamble to USPAP states that the purpose of the standards

> is to promote and maintain a high level of public trust in appraisal practice by establishing requirements for appraisers. It is essential that appraisers develop and communicate their analyses, opinions, and conclusions to intended users of their services in a manner that is meaningful and not misleading.

Appraisal Foundation, Uniform Standards of Professional Appraisal Practice preamble (2008–2009 ed.).

■■■ Based upon this comprehensive legislative structure, we conclude that real estate appraisers practice a profession involving knowledge or skill, and that their conduct should be judged according to the tenets of their field. Therefore, the buyer's negligence claim against the appraisers involves professional negligence. *See Command Commc'ns, Inc.,* 36 P.3d at 189; *see also Brown v. Interbay Funding, LLC,* 417 F.Supp.2d 573, 579 (D.Del.2006) ("By asserting that [the defendants] deviated from the applicable standard of care required for real estate appraisers, a claim for professional negligence is implicated."), *aff'd,* 198 Fed. Appx. 223 (3d Cir.2006).

We now turn to analyzing the question of the appropriate standard of care to apply in this case.

#### D. The Standard of Care

As a preliminary matter, the buyer contends that the critical inquiry is whether the appraisers were wrong when they determined that the dwelling was not a mobile home. Thus, the buyer argues, all she need show is that the dwelling was a mobile home to establish that the appraisers breached the standard of care. We disagree.

The relevant issue here is not simply whether the appraisers made an error or mistake, but rather whether their conduct fell below the applicable standard of care for the profession. *See Myers v. Beem*, 712 P.2d 1092, 1094 (Colo.App.1985) (making a mistake is not negligence as a matter of law); *see also Powder Horn Constructors, Inc. v. City of Florence*, 754 P.2d 356, 373 (Colo. 1988) (Vollack, J., dissenting) (whether a mistake constitutes negligence depends on the circumstances and requires an objective comparison of the particular conduct to what a reasonably prudent person would do in the same situation); *Boehm v. Pernoud*, 24 S.W.3d 759, 761 (Mo.Ct.App.2000)(honest error of judgment in making diagnosis is insufficient to support liability unless mistake constitutes negligence).

#### 1. USPAP

The buyer contends that we need look no further than USPAP to set the standard of care for the appraisals at issue in this case because USPAP governs the conduct of real estate appraisers in Colorado. We disagree.

Specifically, the buyer cites several USPAP standards, which state that an appraiser must:

- "[C]orrectly complete research and analyses necessary to produce a credible appraisal." USPAP Standard 1.
- "[B]e aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal." USPAP Standards Rule 1–1(a).
- "[N]ot commit a substantial error of omission or commission that significantly affects an appraisal." USPAP Standards Rule 1–1(b).
- "[N]ot render appraisal services in a careless or negligent manner." USPAP Standards Rule 1–1(c).
- "Identify the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including . . . its location and physical, legal, and economic attributes." USPAP Standards Rule 1–2(e)(1).

We conclude that these USPAP standards, adopted as part of an administrative regulatory scheme, may be used as evidence of the standard of care, although they are not conclusive proof of the standard. *See Scott v. Matlack, Inc.*, 39 P.3d 1160, 1170 (Colo.2002) (evidence of Occupational Safety and Health Administration regulations admissible as "some indication of the standard of care"); *Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579, 591 (Colo.1984) ("[C]ompliance with an administrative safety regulation does not conclusively establish that the highest degree of care was exercised, but is merely one circumstance to be considered in determining whether there is sufficient evidence to submit a negligence claim to the jury."); *Kelley v. Carbone*, 361 Ill.App.3d 477, 483, 297 Ill.Dec. 355, 837 N.E.2d 438, 443 (2005) (although USPAP did not create a duty toward third parties, its standards help to "define the scope of a preexisting duty").

This does not, however, end our inquiry. The thrust of the buyer's professional negligence claim is that the appraisers "had a duty . . . to use such skill, prudence, and diligence as other members of the profession commonly possess"; they breached this duty; and they "were negligent in appraising the [p]roperty at more than its value" based on the alleged error of failing to identify the dwelling as a mobile home.

In order to determine whether the appraisers breached their standard of care, it would be necessary for the jury to understand the "standard minimum of special knowledge and ability," and how reasonable care is exercised "in a manner consistent with members of the profession in good standing," when an appraiser determines whether a structure is a mobile home. *See Command Commc'ns*, 36 P.3d at 189; *see*

*also Redden,* 38 P.3d at 80–81. Under the facts of this case, this inquiry is complicated by the fact that both appraisers stated that the dwelling had once been a "modular" home.

Neither the administrative regulations concerning appraisers nor USPAP defines the terms "mobile home" and "modular home." *See* Bd. of Real Estate Appraisers Rules §§ 1.1 to 16.1, 4 Code Colo. Regs. 725–2; USPAP definitions. Therefore, even though the relevant USPAP provisions provide some evidence of the standard of care, we conclude that the sections upon which the buyer relies are too general to establish the standard of care in this case. *See Allen,* 102 P.3d at 343–44. Therefore, we must still determine whether the description of the standard of care that governed the appraisers' evaluation of the dwelling as a "mobile home" or a "modular home" is beyond the common knowledge and experience of ordinary persons so that expert testimony is required to describe it. *See id.; Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 931 (Colo.1997) ("Because [oil and gas] commission rules are only evidence of the applicable standard of care, expert testimony concerning standard industry customs and practices is relevant additional evidence of that standard if the standard is not within the common knowledge and experience of ordinary persons.").

### 2. Specialized or Technical Knowledge

■ The buyer asserts that the appraisers' alleged failures to identify the dwelling as a "mobile home" would be "self-evident to any juror." Expert testimony is unnecessary to prove her professional negligence claim, she contends, because the standard of care does not require specialized or technical knowledge. Thus, in her view, this issue is akin to the situation where a surgeon cuts off the wrong leg. *See Palmer v. A.H. Robins Co.,* 684 P.2d 187, 210 (Colo.1984). Although it is obvious to all that removing the wrong leg is below any reasonable standard of care, we disagree with the buyer's contention that the standard of care is equally obvious here. Rather, in order to resolve the professional negligence claim, the jury would have to understand the differences between "mobile

homes" and "modular homes." For the reasons below, we conclude that expert testimony is necessary to provide the jurors with this understanding.

The buyer did not provide the trial court with definitions of the terms "mobile home" and "modular home"; explain the differences between them; or inform the court of how those differences affect appraisals. As we point out above, USPAP does not define those terms or differentiate between them.

The terms "mobile home" and "modular home" are similar enough that it is reasonable to assume that ordinary jurors use the terms interchangeably. Indeed, a division of this court recognized that the general usage of the terms "mobile home" and "modular home" often lumps them together. Concluding that the term "mobile home" was ambiguous as used in a restrictive covenant, the division observed:

> There are indeed differences in the construction of trailer homes and mobile, modular, manufactured, and Department of Housing and Urban Development (HUD) sanctioned, and Uniform Building Code (UBC) sanctioned mobile homes. *However, various bodies of law use the terms interchangeably.*

*Holiday Acres Prop. Owners Ass'n v. Wise,* 998 P.2d 1106, 1108 (Colo.App.2000) (emphasis added). As support for this conclusion, the division cited a report issued by the Colorado Division of Housing, which stated that, "for the most part," people do not distinguish between terms such as "mobile home" and "modular home" when referring to factory-built homes. *Id.* (citing State of Colorado, Division of Housing, *Brief History of Colorado Homes That Were Built in a Factory* (1998)).

Although we do not interpret covenants here, the division's conclusion in *Holiday Acres* that the term "mobile home" is ambiguous is instructive. Because people often use terms such as "mobile home" and "modular home" interchangeably, and because the buyer did not provide the trial court or this court with a basis for defining those terms, we consulted federal and state laws to see if they contain relevant definitions that would make expert testimony unnecessary.

This consultation convinces us that, although there are several different definitions of "mobile home" and "modular home," we cannot determine, without the assistance of expert testimony, which, if any of them, apply to the work of appraisers. For example, our research did not find definitions of "mobile home" or "modular home" in the Colorado statutes governing appraisers. §§ 12–61–701 to –721.

Potentially pertinent definitions are found in the Federal Mobile Home Construction and Safety Standards Act (the Act), which Congress enacted in 1974. Pub.L. 93–383, tit. VI, 88 Stat. 700 (1974). In 1980, the Act was changed to the Federal Manufactured Housing Act. Pub.L. 96–399, tit. III, § 308(c)(4), 94 Stat. 1641 (1980). The term "manufactured home" was substituted for "mobile home." *See* 42 U.S.C. § 5401 note ("References to 'mobile homes,' wherever appearing in text, were changed to 'manufactured homes' in view of the amendment...."); Pub.L. No. 96–399, § 308(c)(4) (requiring the substitution of "manufactured home" for "mobile home" wherever the latter appeared in the statutes).

For the purposes of the Act, the term "manufactured home" is defined in 42 U.S.C. § 5402(6). The Code of Federal Regulations adds explanatory language to the Act's statutory definition in 24 C.F.R. § 3280.2.

The Act also refers to "modular homes." Modular homes are excluded from the Act's coverage when specified conditions are met. 42 U.S.C. § 5403(f). The Code of Federal Regulations explains the certification process by which a manufacturer may elect to exclude a modular home from the Act's coverage. 24 C.F.R. § 3282.12(a). A federal regulation indicates that a structure may be both a manufactured and a modular home. 24 C.F.R. § 3282.12(a).

The United States Department of Housing and Urban Development (HUD) has issued appraisal requirements for manufactured homes to determine whether they are eligible for FHA mortgage insurance. *See Manufactured Homes: Eligibility and General Requirements—Title II*, ch. 1, at 1–90a (Appraisal and Property Requirements), *available at* www.hud.gov/offices/hsg/sfh/ref/sfhp 1–9a.cfm. The HUD appraisal requirements define "manufactured homes," in part, as factory-built, but they also state that "[m]odular construction is also a factory-built home, but is treated the same as stick-built housing."

There are at least four different definitions of "mobile home" found in Colorado's statutes. These definitions appear in statutes addressing property taxes, section 39–1–102(7.8) and (8), C.R.S.2009; tax deferrals for the elderly and military personnel, section 39–3.5–101(1.5), C.R.S.2009; the Consumer Credit Code, section 5–1–301(29), C.R.S.2009; and savings and loan associations, section 11–41–118(5), C.R.S.2009.

There are at least two definitions of "modular home." One is found in the property tax statutes, section 39–1–102(8.3), C.R.S.2009; and one in the statutes governing factory-built structures, section 24–32–3302(10) and (25), C.R.S.2009.

After analyzing these definitions, we reject the buyer's claim that it is such a simple matter to determine whether the dwelling was a mobile home that expert testimony is unnecessary to define the standard of care in this case. Expert testimony would be necessary in the first instance to inform the jury of what mobile homes and modular homes are, and whether one of these definitions, or a definition that we have not found, governs the work done by appraisers.

Between the federal and state law we have found, there are as many as six definitions of "mobile home" and as many as four definitions of "modular home." The sheer multiplicity of definitions weighs against a conclusion that determining whether a structure is a mobile or a modular home is within the experience of ordinary jurors.

In the absence of expert testimony providing the relevant definition, it would not be reasonable to expect a jury to sort through the definitions listed above to find the one that applies. For example, if state law is the lodestar, one definition of "mobile home," section 39–3.5–101(1.5), refers to specific dimensions; the others do not. One definition of "mobile home" refers to structures on wheels, *id.;* one definition refers to structures on chasses, section 5–1–301(29); and

one definition refers to homes built pursuant to standards promulgated by federal law, section 39–1–102(7.8) and (8). One definition of "modular home" includes homes that are not built pursuant to the federal standards, section 39–1–102(8.3); the other definition does not refer to federal standards.

Further, the definitions, by themselves or when compared, contain a level of complexity that would require expert testimony to explain. Under the Act, the term "manufactured home" was substituted for "mobile home" almost thirty years ago. The Act contemplates that modular homes can be manufactured homes unless the manufacturer complies with a certification process designed to exclude modular homes from the Act's coverage. 24 C.F.R. § 3282.12(a). Therefore, if this federal law were the relevant definition of terms, expert testimony would be necessary to inform the jury whether the dwelling in this case was a "mobile home," as that term has been incorporated into the term "manufactured home," or a "modular home," which may, or may not, have been excluded from the Act's coverage.

The Act requires that manufacturers of manufactured homes comply with both national and local building codes. 24 C.F.R. § 3282.12(e). This process, and its requirements, appear to be technical, and, therefore, beyond the experience of ordinary jurors.

The HUD appraisal requirements also appear to require a level of sophistication beyond that possessed by ordinary jurors. For example, an appraiser must be able to determine whether a manufactured home is "classified and subject to taxation as real estate"; or is "designed to be used as a dwelling with a permanent foundation built to FHA criteria"; or has a grade elevation "at or above the 100–year return frequency flood elevation." *See Manufactured Homes: Eligibility and General Requirements—Title II,* ch. 1, at 1–90a (Appraisal and Property Requirements).

At least one state law definition suggests complexity beyond the ken of ordinary jurors because it requires familiarity with federal standards, such as those referenced in section 39–1–102(7.8) and (8).

Moreover, simply focusing on the word "mobile" does not eliminate the need for expert testimony. To be sure, the prospect that the dwelling was transported to the foundation on which it rests is some indication that it was "mobile" at one point. *See Webster's Third New International Dictionary* 1450 (2002)("mobile" means "capable of moving or being moved from one place to another: MOVABLE"). However, the definitions discussed above indicate that both modular homes and mobile homes are assembled in one place and transported to another, which is intended to become the home's permanent location. Once attached to the permanent foundation, mobile homes and modular homes, which are often similar in appearance to conventional homes, are both considered real property. *See Tucker v. Wolfe,* 968 P.2d 179, 181–83 (Colo.App. 1998). Thus, the nature of the mobility of these two types of homes does not provide a basis for distinguishing between them.

Last, we concede, as we must, that we may not have found the correct definitions for the relevant terms. Our uncertainty reinforces our conclusion that expert testimony is necessary in this regard.

Because we do not know, without the assistance of expert testimony, whether any of these definitions is pertinent to the work done by appraisers, we conclude that the trial court was correct, as a matter of law, when it determined that "[t]he significance, both absolute and relative, of whether the [dwelling] was formerly a mobile or modular home, and the resulting effect on the fair market value of the subject property, are beyond the knowledge of ordinary persons even with the non-specific guidance of the provisions of USPAP." *See Crawford v. Signet Bank,* 179 F.3d 926, 929 (D.C.Cir.1999) (claim of negligent real estate appraisal required expert testimony on the standard of care governing the appraisal profession); *Brown,* 417 F.Supp.2d at 579 (expert testimony was required to state claim for professional negligence against real estate appraiser); *see also* Timothy J. Harris, *The Requirement of Expert Testimony in Appraisal Litigation,* Appraisal J. 68–73 (Jan.1992).

We conclude that this is so because, absent expert testimony, we are not persuaded that ordinary persons would understand what steps a reasonably prudent appraiser would take to ascertain the nature or physical characteristics of a structure that may be a mobile home or a modular home; what information such an appraiser is entitled to rely upon; and whether the appraisers' conduct was, or was not, consistent with those practices.

■ The discovery of a "receipt for a mobile home" in the building department's files concerning the property does not assist the buyer's cause. Our review of the record indicates that the buyer did not provide this information to the trial court until she filed a motion to reconsider the order granting summary judgment. Thus, the trial court was not required to consider this information. *See Ogunwo v. Am. Nat'l Ins. Co.*, 936 P.2d 606, 611 (Colo.App.1997) (trial court need not entertain new theories on a motion to reconsider following the grant of summary judgment).

Further, a copy of the receipt does not appear in the record, and so we do not know what information the receipt contained, including whether it referred to the existing dwelling that had been placed on the foundation, or whether it referred to the dwelling as a "mobile home," a "modular home," or a "manufactured home." *See Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo.2007) (evidence offered in response to a summary judgment motion must be sufficient to show that a reasonable jury could return a verdict for the nonmoving party).

■ Even assuming that the receipt referred to the dwelling as a "mobile home," we conclude that the difficulty in distinguishing between modular homes and mobile homes described above would require expert testimony to establish that the receipt's reference to a "mobile home" was congruent with a definition of the term that would exclude modular homes. Without the guidance of expert testimony concerning the technical knowledge necessary to distinguish between mobile homes and modular homes, jurors would be at sea: their common sense would be inadequate to make that distinction.

*See Franz v. Bd. of Med. Quality Assurance*, 31 Cal.3d 124, 141, 181 Cal.Rptr. 732, 642 P.2d 792, 800 (1982) ("Technical knowledge is not requisite to conclude that complications from a simple injection, a surgical clamp left in the patient's body, or a shoulder injury from an appendectomy indicate negligence. Common sense is enough to make that evaluation." (citations omitted)).

### III. Contract Claims

■ The buyer also contends the trial court erred in entering summary judgment on her contract claims because, regardless of whether expert testimony was needed to establish negligence, it was not necessary to recovery under a breach of contract theory. Again, we perceive no error.

In responding to the appraisers' summary judgment motion, the buyer did not specifically dispute the appraisers' assertion that all of the claims, regardless of how labeled, were actually based in negligence or required proof of a negligence-based standard of care. Indeed, in this appeal, the buyer concedes that it was not until her motion for reconsideration that she argued there was any distinction, concerning the need for expert testimony, between her contract and negligence claims.

Under these circumstances, we conclude the trial court did not abuse its discretion in declining to reconsider or reverse its summary judgment ruling based on this new argument or theory. *See Ogunwo*, 936 P.2d at 611 (trial court need not entertain new theories on a motion to reconsider following the grant of summary judgment); *see also Graven v. Vail Assocs., Inc.*, 888 P.2d 310, 316 (Colo.App.1994) (same), *rev'd on other grounds*, 909 P.2d 514 (Colo.1995); *Bowlen v. Fed. Deposit Ins. Corp.*, 815 P.2d 1013, 1016 (Colo.App.1991) (trial court did not abuse its discretion in declining to consider new theories asserted for first time in motion seeking reconsideration of summary judgment).

The judgment is affirmed.

Judge WEBB and Judge ROMÁN concur.