STUART, Justice.
Riverstone Development Co., Inc. (“Riv-erstone Development”), sued Garrett & Associates Appraisals, Inc. (“G & A Appraisals”), in the Madison Circuit Court, asserting negligence, wantonness, and conspiracy claims stemming from a July 2010 appraisal G & A Appraisals conducted on waterfront property Riverstone Development owned on Lake Guntersville. During the course of the eventual trial on those claims, the trial court entered a judgment as a matter of law in favor of G & A Appraisals on the negligence claim, and, at the conclusion of the trial, the jury returned a verdict in favor of G & A Appraisals on the wantonness and conspiracy claims. Riverstone Development appeals, arguing that the judgment as a matter of law was improperly entered on the negligence claim and that it is entitled to a new trial based on juror misconduct. We affirm.
I.
In 2005, Southern Heritage, LLC, a company owned by Frank McRight and Michael Lastovic, completed a series of land transactions resulting in its owning approximately 170 acres of property abutting Lake Guntersville. As part of those transactions, Southern Heritage also obtained a right-of-way easement from a neighboring landowner providing access to the property from County Road 88 via an existing roadway. .
Sometime in the summer of 2006, Southern Heritage began borrowing money from First American Bank in Huntsville to start developing the property, with the ultimate goal of creating a subdivision to be known as Pinnacle Cove. Southern Heritage used the borrowed funds to begin initial development work, such as building exploratory roads, drafting plats, and obtaining permits from the Army Corps of Engineers and the Tennessee Valley Authority that would allow it to build boathouses along the shore of Lake Guntersville. By February 2007, Southern Heritage had borrowed approximately $1.5 million from First American, which loan was secured by a mortgage on the Pinnacle Cove property, and McRight subsequently testified at trial that First American had indicated that it would also provide the additional financing necessary to complete the project, which McRight estimated would have cost approximately $4 million.
Southern Heritage originally hoped to have initial development work completed by approximately September 2007 so that it could begin selling lots. However, in March 2007, First American notified Southern Heritage that it would not continue to fund the development until 50 percent of the lots were “pre sold.” McRight subsequently testified that this condition was tantamount to pulling all future funding because Southern Heritage did not anticipate selling 50 percent of the lots in Pinnacle Cove until approximately two years after it began selling lots. Southern Heritage thereafter attempted to obtain financing from other sources but *253 was unable to do so. It subsequently ran out of money in May 2007, and no substantive work was done on the Pinnacle Cove property after June 2007.
Shortly after First American indicated that it would no longer provide financing, McRight and Lastovic created a new company, Riverstone Development, to take over ownership of the Pinnacle Cove property, because Southern Heritage owed other property in addition to that tract. For approximately the next two years, McRight, Lastovic, Southern Heritage, and/or Riverstone Development (hereinafter referred to collectively as “the developing parties”) 'continued to pay interest on the loan held by First American: Sometime in the summer of 2009, RBC Bank, which had purchased First American and taken over Southern Heritage’s loan, informed the developing parties that it would not renew the loan unless the payment terms were modified and additional collateral and guarantees were provided. The developing parties ultimately concluded that they could not agree to those changes, and the loan accordingly went into default status when the developing parties stopped making payments.
In March 2010, RBC Bank contracted Phil Fowler, a state-certified appraiser, to prepare an appraisal of the Pinnacle Cove property. Fowler had previously appraised the property on multiple occasions, assigning it an appraised value of $2,115 million in 2007 ánd an appraised value of $1.765 million in' February 2009. The March 2010 appraisal Fowler submitted to RBC Bank estimated the value of the property to be $1.7 million.' That same month, Riverstone Development, which now owed approximately $1.6 million on the loan, approached RBC Bank and offered to provide a deed in lieu of foreclosure — essentially selling .the Pinnacle Cove property to RBC Bank for the amount owed — but that offer was rejected.
In June 2010, RBC Bank contracted G & A Appraisals to conduct a new appraisal of the Pinnacle Cove property. This appraisal was conducted by Thomas Garrett and Leigh Stephens, both state-certified appraisers, and their July 2010 appraisal report placed the value of the Pinnacle Cove property at $340,000. ' Several months later, RBC Bank foreclosed on the Pinnacle Cove property, eventually purchasing it at the foreclosure sale for $300,000, leaving a deficiency balance of approximately $1.3 million.[1] RBC Bank thereafter sued the developing parties to recover that deficiency balance, and, sometime in 2012, they reached a settlement agreement in which McRight agreed to provide $250,000 to Southern Heritage and Riverstone Development that they could use to settle the claims against them.
Riverstone Development and Southern Heritage initiated the instant action on July 30, 2012, when they sued G & A Appraisals, Garrett, and Stephens, asserting negligence, wantonness, and conspiracy claims. The gravamen of their claims was that Garrett and Stephens had either performed their appraisal of the Pinnacle Cove property so unskillfully as to constitute negligence and/or wantonness or, in the alternative, that they had conspired with RBC Bank to intentionally appraise the property at lower than market value. In either case, Riverstone Development and Southern Heritage argued, they were injured when RBC Bank used the $340,000 appraisal as the basis of its $300,000 bid at the foreclosure sale, thus leaving them *254 with no property and owing a deficiency balance of $1.3 million. • ■
Eventually, Southern Heritage, Garrett, and Stephens were voluntarily dismissed from the case, leaving only Riverstone Development as the plaintiff and G & A Appraisals as the defendant.[2] The case proceeded to a jury trial in October 2014, and, following the close of Riverstone Development’s case, G & A Appraisals’ motion for a judgment as a matter of law on the negligence claim was granted. The wantonness and conspiracy claims, were .thereafter submitted to the jury at the close of all testimony, and the jury ultimately returned a verdict in favor of G & A Appraisals on both claims. The trial court subsequently entered a judgment on the jury’s verdict, after which Riverstone Development moved for a new trial on multiple grounds. On January 18, 2015, the trial court denied that motion for a new trial, and, on February 27, 2015, River-stone Development filed its notice of appeal to this Court.
II.
On appeal, Riverstone Development argues that the trial court erréd (1) by entering the judgment as a matter of law in favor of G & A Appraisals on the negligence claim and (2) by denying Riverstone Development’s motion for a new trial on juror-misconduct grounds. We first review the judgment as a mattér of law entered on Riverstone Development’s negligence claim.
In Blue Circle Cement Inc. v. Phillips, 989 So.2d 1025, 1029 (Ala.2007), we explained the standard of review applicable to a trial court’s ruling on a motion for , a judgment as a matter of law:
“‘This Court applies the same standard of review to a ruling on a motion for a [judgment as a matter of law] as the trial court used in initially deciding the motion. This standard is “materially indistinguishable from the standard by which we review a summary judgment.” Hathcock v. Wood, 815 So.2d 502, 506 (Ala.2001). We must decide whether substantial evidence .was presented to the jury, which, when viewed in the light most favorable to [the non-movant], would warrant a jury verdict in [its] favor. City of Birmingham v. Sutherland, 834 So.2d 755 (Ala.2002). “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’-’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’ ”
(Quoting Webb Wheel Prods., Inc. v. Hanvey, 922 So.2d 865, 870 (Ala.2005).) Thus, in order for its negligence claim to proceed to the jury in this case, Riverstone Development was required to present substantial evidence indicating (1) that G & A Appraisals owed it a duty; (2) that G & A Appraisals breached that duty; (3) that Riverstone Development suffered a loss; and (4) that G & A Appraisals’ breach was the actual and proximate cause of that loss. QORE, Inc. v. Bradford Bldg. Co., 25 So.3d 1116, 1123 (Ala.2009). When it orally'entered the judgment as a matter of law on Riverstone Development’s negligence claim at the close of Riverstone Development’s case, the trial court explained that, “based on the presentation of evidence, I don’t, find that [Riverstone Development] established that the standard of care was breached in this case or that any alleged breach of the standard of care proximately caused the damages complained of in this case.” For the reasons that follow, we agree that Riverstone De *255 velopment failed to present substantial evidence indicating that G & A Appraisals breached any duty it owed Riverstone Development; accordingly, we affirm the judgment as a matter of law entered by the trial court on Riverstone Development’s negligence claim.[3]
As an initial matter, we note that the individuals accused of negligence and whose negligence is attributed to G & A Appraisals — Garrett and Stephens — are licensed professional real-estate appraisers. The general rule in Alabama is that, when negligence is asserted against a professional, a witness also qualified in that profession must present expert testimony establishing both a breach of the standard of care and causation. See, e.g., Collins Co. v. City of Decatur, 533 So.2d 1127, 1134 (Ala.1988) (applying professional-negligence rule to architects and engineers). Alabama courts have not yet considered whether this rule applies to real-estate appraisers as well; however, other courts that have considered the issue have decided that it does. For example, in Hice v. Lott, 223 P.3d 139, 143-44 (Colo.App.2009), the Colorado Court of Appeals concluded that real-estate appraisers practice a profession involving knowledge or skill- and that, accordingly, claims against them asserting professional negligence must generally be supported by expert testimony. In making that' determination, the Hice court noted that real-estate appraisers are licensed and regulated by Colorado law, are subject to rules and regulations set forth by a state board, and are subject to discipline for misconduct or violation of those rules and regulations. Id. Real-és-tate appraisers in Alabama operate in a similar environment — they are licensed and regulated by the Alabama Real Estate Appraisers Board, which maintains rules and regulations governing the profession and which has the ability to discipline license holders who do not operate in accordance with those rules, and regulations. See Rule 780-X-1-.01 et seq., Ala. Admin. Code (Real Estate Appraisers Bd.). We accordingly similarly conclude that real-estate appraisers are engaged in a profession requiring specialized knowledge and skill and that the professional-negligence *256 rule therefore requires expert testimony to establish a licensed real-estate appraiser’s breach of the standard of care.
In this case, no expert witness definitively declared in testimony that Garrett and/or Stephens — and thus, by extension G & A Appraisals — breached the standard of care; however, Riverstone Development argues that Stephens’s own testimony constituted expert testimony demonstrating her breach of the standard of care in one respect and that her breach of the standard of care in another respect is so obvious that no expert testimony is necessary. Riverstone Development first argues that Stephens effectively acknowledged that she breached the standard of care when she testified that she was “protecting the bank” when she performed the July 2010 appraisal of the Pinnacle Cove property, even though, Riverstone Development argues, the undisputed evidence indicated that real-estate appraisers must always perform their work with impartiality, objectivity, and independence.
At trial, both Stephens and Fowler, a real-estate appraiser testifying as an expert witness on behalf of Riverstone Development, gave expert testimony indicating that licensed real-estate appraisers in Alabama are required to abide by the Uniform Standards for Professional Appraisal Practice (“USPAP”). They both further agreed that one of those standards mandated that a real-estate appraiser must always be “impartial, objective, and independent.” At trial, counsel for Riverstone Development questioned Stephens regarding this standard and a statement she had made in her deposition regarding her view that it was her duty to “protect the bank”:
“Q. Ms. Stephens, you did this apprais- . al knowing there was potential for foreclosure, correct?
“A. Correct.
“Q. You did this appraisal so you could — you deflated this value on this appraisal so you could protect the bank, didn’t you?
“A. No.
“Q. Did you tell me on your deposition that you did it to protect the bank?
“A. I told you in my deposition that it was my job, as an appraiser, to protect the bank.
“Q. So you did say on deposition that you were protecting the bank?
“A. I did.
“Q. Isn’t that a violation of USPAP, your obligation to be independent, objective, and impartial?
“A. Independent, objective, and impartial is what I was.
“Q. I’m asking you, is protecting a party to the transaction a violation of USPAP? Simple question. We have read the rules. I am asking you.
“A. As I said in my deposition, I was protecting the bank from making a loan based upon the premise that the highest and best use was for a subdivision, when, in my professional opinion, the highest and best use was as vacant land, not as a subdivision.
“Q. So you were protecting—
“A. Protecting the bank—
“Q. The bank—
“A. —to not recommend they loan more money on a subdivision.
“Q. Well, that’s not your job as an appraiser, is it?
“A. It is.
“Q. I thought you weren’t supposed to take anybody’s sides. You weren’t supposed to advocate anybody’s position; isn’t that [what] USPAP says?
*257 “A. I don’t care which side gets mad when I come up with a value, it’s my own opinion. One side is likely to be unhappy.
“Q. I’m not asking who is angry or mad.
“A. Right.
“Q. I’m asking you about you. You told us, in this transaction, you were protecting the bank?
“A. Yes.
“Q. Simple question. Doesn’t USPAP say you can’t do that?
“A. They say to be independent, impartial, and objective, which I was.
“Q. Yes, ma’am. And it says you cannot advocate the position of a client, right?
“A. That’s correct.
“Q. And in this case, your client was the bank, correct?
“A. That’s right.
“Q. Again, ma’am, is that protecting the bank a violation of your standards as an appraiser?
“A. No.”
We are not convinced that Stephens’s testimony constitutes substantial evidence of a breach of the standard of care. River-stone Development views Stephens’s statement that she was “protecting the bank” as tantamount to a statement that she was “favoring the bank”; however, we do not believe that a fair-minded person in the exercise of impartial judgment could make that conclusion when considering the whole of Stephens’s testimony. In Giles v. Brookwood Health Services, Inc., 5 So.3d 533, 550 (Ala.2008), this Court cautioned against the practice of relying on isolated excerpts of deposition testimony to argue in favor of a proposition the testimony as a whole does not support, explaining:
“[Tjhe testimony of [the plaintiffs] medical expert is not sufficient to satisfy [the plaintiffs] burden of producing substantial evidence demonstrating the existence of a genuine issue of material fact as to her medical-malpractice claims_ Even if portions of her expert’s testimony could be said to be sufficient to defeat a summary-judgment motion when viewed ‘abstractly, independently, and separately from the balance of his testimony,’ ‘we are not to view testimony so abstractly.’ Hines v. Armbrester, 477 So.2d 302, 304 (Ala.1985). See also Malone v. Daugherty, 453 So.2d 721, 723-24 (Ala.1984). Rather, as this Court stated in Hines:
“ ‘We are to view the [expert] testimony as a whole, and, so viewing it, determine if the testimony is sufficient to create a reasonable inference of the fact the plaintiff seeks to prove. In other words, can we say, considering the entire testimony of the plaintiffs expert, that an inference that the defendant doctor had acted contrary to recognized standards of professional care was created?’
“477 So.2d at 304-05; see also Pruitt v. Zeiger, 590 So.2d 236, 239 (Ala.1991) (quoting Hines, 477 So.2d at 304-05).
“Similarly, in Malone v. Daugherty, supra, another medical-malpractice case, we noted that a portion of the plaintiffs medical expert’s testimony in that case,
“‘when viewed abstractly, independently, and separately from the balance of his sworn statement, would appear sufficient to defeat the [defendant’s] motion for summary judgment. But our review of the evidence cannot be so limited. The test is whether [the plaintiffs medical expert’s] testimony, when viewed as a whole, was sufficient to create a reasonable inference of the fact Plaintiff sought to prove. That is to say, could a jury, as *258 the finder of fact, reasonably infer from this medical expert’s testimony, or any part thereof when viewed against the whole, that the defendant doctor had acted contrary to the recognized standards of professional care in the instant case.
“‘Thus, in applying this test, we must examine the expert witness’s testimony as a whole.’
“453 So.2d at 723; see also Downey v. Mobile Infirmary Med. Ctr., 662 So.2d 1152, 1154 (Ala.1995) (noting that portions of a medical expert’s testimony must be viewed in the context of the expert’s testimony as a whole); Pendarvis v. Pennington, 521 So.2d 969, 970 (Ala.1988) (‘[W]e are bound to consider the expert testimony as a whole,’).”
It is clear, when examining Stephens’s testimony as a whole, that she was not stating that she “favored” the bank when she stated that she was “protecting” it; rather,' she was merely articulating the fact that lenders pay to have appraisals performed in order to protect themselves from making undersecured loans. See, e.g., Graham v. Bank of America, N.A., 226 Cal.App.4th 594,. 607, 172 Cal.Rptr.3d 218, 229 (2014) (“An appraisal is performed in the usual course and scope of the loan process to protect the lender’s interest to determine if the property provides adequate security for the loan.” (emphasis omitted and emphasis added)), and Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 661 (8th Cir.2012) (“[T]he primary purpose of an appraisal is to protect the lender’s interests by ensuring the value of the collateral is sufficient to secure the loan.” (emphasis added)). No fair-minded person in the exercise of impartial judgment could consider the whole of Stephens’s testimony and conclude that Stephens’s statement that she was “protecting the bank” indicates that she was not “impartial, objective, and independent” as required by US-PAP.
Riverstone Development next argues that Stephens — and by extension G & A Appraisals — was negligent inasmuch as she overlooked the fact that Riverstone Development owned a permanent easement providing access to the Pinnacle Cove property when she was preparing the appraisal report for G & A Appraisals and that no expert testimony was necessary to establish a breach of the standard of care in that respect because her want of skill and/or lack of care is so apparent that it can be understood by any layperson. See, e.g., Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C., 42 So.3d 667, 680-81 (Ala.2009) (explaining exception to professional-negligence rule when the professional’s error is so obvious that neglect would be clear to average layperson). However, although Stephens did acknowledge that she was unaware of the easement held by Riverstone Development, we do not agree that that evidence alone is sufficient to merit the submission of the negligence claim to the jury.
With regard to the possibility of real-estate appraisers making mistakes in the performance of their duties, Riverstone Development’s expert Fowler testified that “a simple mistake may not constitute gross negligence [but] a series of mistakes may.” Furthermore, Fowler agreed with G & A Appraisals’ attorney that, under USPAP, “you can’t have an error of omission or commission that significantly affects the appraisal.”[4] In this case, Stephens acknowledged that she overlooked the easement when preparing the appraisal; however, she also testified that her error in that regard had no impact on her valuation *259 of the property. When questioned by G & A Appraisals’ attorney, she stated:
“Q. The real question [counsel for Riv-erstone Development] wanted to ask about was the. fact whether that missing [easement] affected the value of this property. Did you missing the easement affect the value of, the. property in your appraisal?
“A. . It did not. ■
“Q: And the reason why has to do with comparables, doesn’t it?
“A. That’s right.
[[Image here]]
“Q. Did you make any — let me ask you this question first — the properties that you used as comparables all had access?
“A. Yes.
“Q. Did you make any deductions on the value of those comparables to make up for the fact that you listed this property, the 170 acres, as not having access?
“A. No, I did not.
“[Questions about other adjustments made for size, location, and proximity to flood plain.]
“Q. No adjustments for access?
“A. Correct.
“Q. What does that tell us about your • . value that you placed on the prop- ' erty?
“A. It tells us that I basically assumed if you get access, that access did not play a role in the value that I put on the property.”
Thus, the expert testimony heard at trial— from both Fowler and Stephens — indicated that an appraiser’s error could be a breach of the standard of care if it affected the appraisal’s final .value; however, there was no expert testimony indicating .that in this case Stephens’s failure-to identify the specified easement had an effect on the final estimated value arrived at in the July 2010 appraisal. In fact, .Stephens specifically refuted that idea-, and, when questioned by G & A Appraisals’ attorney at trial, Fowler emphasized that he was not making any judgment regarding the effect on the July 2010 appraisal of not taking the easement into account: .
“Q, You told me, during the course of your deposition, did you not, that you were not there to testify about the Garrett and- Stephens apprais■al? , •
“A. I don’t have any basis to testify about that. I have never seen their appraisal.
“Q. And you are not here to testify about it today, are you?
“A. No.
“Q. And you are not here to offer any opinion with regard to the Garrett-Stephens appraisal?
“A. That would be a review, and I would have to meet all the requirements if I did that.
“Q. Well . . I think, during the course - of your deposition, you told me, because you had appraised this property, you would not and could not do a review.
“A. No,- it wouldn’t be appropriate for me to do a review on a property that I had appraised.
“Q. Because it would affect your impartiality, because you’ve already got a pre-fixed opinion, right?
“A. That’s exactly the reason.
“Q. And you just acknowledged that you have not reviewed or read the Garrett[-Stephens] appraisal, have you?
“A. I have not reviewed it, no.
“Q, And you told me also that you weren’t going to comment on their *260 appraisal because you didn’t know what [their] appraisal premise was; does that sound right?
“A. Yes.”
Thus, there was no expert testimony presented at trial indicating that the error Stephens made by overlooking the easement had an effect on the final value for the Pinnacle Cove property listed in the appraisal. Riverstone Development argues that no expert testimony is needed because the error is obvious to any layperson; however, although it might be true that a layperson can understand the concept of a professional’s overlooking a relevant fact, we disagree that a layperson has the expertise in this situation to understand whether and how a real-estate appraiser’s overlooking an easement might impact that appraiser’s conclusions as to the valuation of a property. As the trial court stated when granting G & A Appraisals’ motion for a judgment as a matter of law:
“[Riverstone Development] also argued yesterday that the nature of the alleged breach in this case is so obvious that a layperson is capable of finding that a breach occurred and does not require expert testimony. That just doesn’t fly with me. I think if anything has become clear, it’s that appraisals are tricky business and it’s not simple, by any stretch, and the simple analysis of that is looking at the binder of Mr. Fowler’s first analysis that is about two inches thick.”
Moreover, we note that this is not a case where there was no expert testimony given regarding an alleged breach of the standard of care and the plaintiff on appeal is arguing that no expert testimony was needed because the negligence is obvious to any layperson. Rather, in this case there was expert testimony establishing an industry standard with regard to real-estate appraisal errors — that an appraisal error might be considered a breach of the standard of care only if that error affects the appraised value of the property — but the plaintiff now argues that a jury should nevertheless have been allowed to find that the appraisal error was a “common-sense” error constituting negligence without any regard to the standard set forth by the experts and without any regard to whether there was evidence indicating that the error affected the appraised value of the property. Accepting this argument would undermine the purpose of the rule requiring expert testimony in professional-negligence cases, and we decline to do so. The judgment as a matter of law entered on Riverstone Development’s negligence claim is due to be affirmed.
III.
We next turn to Riverstone Development’s juror-misconduct argument. Specifically, Riverstone Development alleges that it is entitled to a new trial because one of the jurors, A.L., failed to acknowledge during voir dire that he had previously been a defendant in a civil lawsuit.
“In Ex parte Dobyne, 805 So.2d [763,] 772 [(Ala.2001)], this Court stated:
“‘[T]he proper standard to apply in determining whether a party is entitled to a new trial in this circumstance [where a juror fails to respond correctly to a question on voir dire] is “whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.” Ex parte Stewart, 659 So.2d [122,] 124 [(Ala.1993)]. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court’s discretion.’
*261 “Id. See also Reynolds v. City of Birmingham, 723 So.2d 822, 824 (Ala.Crim.App.1998) (‘“[T]he ruling of the trial judge denying a motion for new trial will not be disturbed in the absence of a showing of abuse of discretion, and this Court will indulge every presumption in favor of the correctness of his ruling.” ’ (quoting Hall v. State, 348 So.2d 870, 875 (Ala.Crim.App.1977))).”
Ex parte Dixon, 55 So.3d 1257, 1259 (Ala.2010). Thus, Riverstone Development bore the burden of proof in establishing that probable prejudice arose from A.L.’s failure to truthfully respond to a question on voir dire, and the trial court’s conclusion that Riverstone Development failed to meet that burden is subject to great deference under the exceeds-its-discretion standard.
Riverstone Development argues that it was prejudiced in this case because juror A.L. failed to respond to the following question posed by Riverstone Development’s attorney during voir dire:
“Now, let’s make sure — on the terminology here, we are the plaintiff. We go first in the evidence, and we have an obligation of showing our burden of proof. These are the defendants. Anybody been a defendant, in other words, in the same position as these folks in a civil lawsuit? And please don’t — I don’t want to invade — I’m not talking about domestic issues and I’m not talking about criminal cases where [the district attorney’s office] is prosecuting you, something of a criminal nature. I’m talking about civil-damage[s] lawsuits, money-damage[s] lawsuits, civil claims.”
Three prospective jurors in the pool responded affirmatively and were subjected to further questioning; A.L., however, made no response. Riverstone Development thereafter learned — presumably at some time after judgment had been entered on the jury’s verdict — that A.L. had in fact been a defendant in three collection actions apparently stemming from A.L.’s status as a guarantor on three student loans that had gone unpaid. In conjunction with its motion for a new trial, River-stone Development submitted to the trial court copies of three consent judgments that had been entered against A.L. in December 2013, totaling $18,789, $27,525, and $41,132, respectively. Riverstone Development now argues that “[a] person saddled with judgments in that amount would likely be biased against plaintiffs, or sympathetic to defendants, or both” and that the trial court exceeded its discretion in failing to recognize what Riverstone Development says was probable prejudice and to grant its motion for a new trial. (Riverstone Development’s brief, at p. 44.)
G & A Appraisals, however, emphasizes that “not every failure to respond properly to questions propounded during voir dire ‘automatically entitles [the complaining party] to a new trial or reversal of the cause on appeal.’ ” Ex parte Dobyne, 805 So.2d 763, 771-72 (Ala.2001) (quoting Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970)). G & A Appraisals further argues that Riverstone Development failed to establish the existence of probable prejudice inasmuch as Riverstone Development’s attorneys failed to testify that they would have struck A.L. had they known of the judgments entered against him. In Ex parte Dobyne, this Court explained:
“The form of prejudice that would entitle a party to relief for a juror’s nondisclosure or falsification in voir dfre would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. Ex parte Ledbetter, 404 So.2d 731 (Ala.1981); Warrick v. State, 460 So.2d 320 (Ala.Crim.App.1984); and Leach v. State, 31 Ala.App. *262 390, 18 So.2d 285 (1944). If the party establishes that the juror’s disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. Id. Such prejudice can be established by the obvious tendency of the true facts to bias the juror, as in Ledbetter, supra, or by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992).”
805-So.2d at 772-73 (emphasis added). It is undisputed that counsel for Riverstone Development did not submit sworn testimony indicating that A.L. would have been challenged had the true facts been known; thus, G & A Appraisals is correct that probable prejudice was not established in that manner. However, Riverstone Development correctly notes that probable prejudice may also be established “by the obvious tendency of the true facts to bias the juror,” id., and it accordingly argues that it is obvious in this case that A.L. would be biased against Riverstone Development and in favor of G & A Appraisals because A.L. had recently stood in the same defendant role that G & A Appraisals was in when he was sued by a company seeking a judgment against him. It is apparent, however, that the tidal court did not accept this argument, and, when considering the relevant facts at the heart of both A.L.’s dispute and the instant dispute — and not just the singular fact that A.L. and G & A-Appraisals were both defendants in civil actions — we cannot say that the trial court exceeded its discretion in concluding that there was no probable prejudice.
The parties both state that the judgments entered against A.L. were the result of loan guarantees he had made, presumably on student loans, inasmuch as the plaintiff bringing the claims against him was the National Collegiate Student Loan Trust. In the instant case, Riverstone Development sought a judgment against G & A Appraisals based on negligence, wantonness, and conspiracy claims. Riverstone Development’s corporate representative at trial was McRight, who, like A.L., had been sued in a separate case as a result of guarantees he had made on a loan, specifically the $1.5 million loan made by First American to Southern Heritage. Thus, the trial court might have fairly concluded that it was equally likely that A.L. would be prejudiced in favor of McRight, and by extension- Riverstone Development, inasmuch as both had been defendants in lawsuits seeking to collect on loan, guarantees they had made.
We further note that even if the trial court could infer, in the absence of direct testimony from Riverstone Development’s attorneys, that those attorneys would have viewed A.L. in a negative light had they had knowledge of the judgments entered against him, it would still require another inference — that the negative effect of the judgments would outweigh the. attorneys’ otherwise, favorable impression of A.L. — in order for the trial court to conclude that probable prejudice existed.[5] See Ex parte Dobyne, 805 So.2d at 773 (explaining in a similar case involving a juror who failed to disclose information that the trial court could not find the existence of probable *263 prejudice based upon on “[a]n inference on an inference”)- In conclusion, the trial court did not exceed its discretion in denying Riverstone Development’s motion for a new trial on the basis of juror misconduct because there was a basis from which the trial court could have concluded that Riv-erstone Development was not probably prejudiced by A.L.’s failure to disclose during voir dire the existence of the judgments entered against him.
IV.
Following the entry of a judgment as a matter of law in favor of G & S Appraisals and a jury trial resulting in a judgment entered in G & A Appraisals’ favor, River-stone Development appealed, arguing that the trial court erred by entering a judgment as a matter of law on its negligence claim, thereby removing that claim from the jury’s consideration, and that the trial court also erred by denying a post-judgment motion for a new trial on the ground of juror misconduct. As explained above, however, the trial court’s decision to enter a judgment as a matter of law on the negligence claim is supported by the law in light of the evidence adduced by River-stone Development during the presentation of its case, and the trial court also acted within its discretion in denying the motion for a new trial inasmuch as there was a basis for it to conclude that River-stone Development was not probably prejudiced by AL.’s lack of disclosure during voir dire. Accordingly, the judgment entered by the trial court is affirmed.
AFFIRMED.
PARKER, SHAW, and WISE, JJ., concur.
MOORE, C.J., concurs in the result.

. RBC Bank thereafter publicly listed the Pinnacle Cove property for sale at $300,000, and it eventually sold for $185,000.

. Garrett in fact died while the case was pending.

. G & A Appraisals has also argued that it performed the July 2010 appraisal for the sole benefit of RBC Bank and that it accordingly owed no duty to Riverstone Development in connection with that appraisal. See Zanaty Realty, Inc. v. Williams, 935 So.2d 1163, 1167 (Ala.2005) (holding that an appraisal company was entitled to a judgment as a matter of law on a negligence claim because the appraisal company was employed by a mortgage company to conduct an appraisal for only mortgage-insurance purposes, and the appraisal company accordingly owed no duty to the buyer of the appraised property who had chosen to rely on that appraisal). However, Riverstone Development argues that both Zanaty and Fisher v. Comer Plantation, Inc., 772 So.2d 455 (Ala.2000), upon which Zanaty relied, are distinguishable inasmuch as those cases involved negligence claims brought by parties that had relied upon appraisals performed for other parties, unlike. Riverstone Development, which claims that its injury re-suited from RBC Bank’s use of an appraisal that G & A Appraisals had performed specifically for RBC Bank. Unlike the appraisals in Zanaty and Fisher, Riverstone Development argues, the appraisal in this case was used by the intended .party for its intended purpose and the injury ultimately suffered was foreseeable. See Harris v. Board of Water & Sewer Comm’rs of City of Mobile, 294 Ala. 606, 613, 320 So.2d 624, 630 (1975) ("[Wjhere one party to a contract assumes a duty to another party tp that contract, and it is foreseeable that injury to a third party — not a party to the contract — may occur upon a breach of that duty, the promissor owes that duly to all those within the- foreseeable area of risk.”). Ultimately, however, we need not decide whether G & A Appraisals owed a duty to Riverstone Development, because Riverstone Development’s failure to''establish a breach of the claimed duty provides a sufficient basis for our judgment.

. Stephens also testified than an error of commission could be a violation of USPAP "if it affected the value of the estimate of the appraiser’s value,’’

, That counsel for Riverstone Development had a favorable impression of A.L. before learning of the judgments entered against him is evidenced not only by the fact that counsel ' did not strike him, but also by the fact that counsel successfully challenged G & A Appraisals' .attempt to strike him, citing' Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), Ironically, the reason given by G & A Appraisals’ counsel for striking A.L. was that he did not respond to any questions or disclose any information during voir dire “other than when he stood Up to tell us who he was.”